## BURNET, COMMISSIONER OF INTERNAL REVENUE, *v.* THOMPSON OIL & GAS COMPANY.

No. 288.   Argued March 16, 17, 1931.—Decided April 13, 1931.

*Assistant Attorney General Richardson,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist* and *Messrs. Sewall Key* and *J. Louis Monarch,* Special Assistants to the Attorney General, *Paul D. Miller, Clarence M. Charest,* General Counsel, and *John MacC. Hudson,* Special Attorney, Bureau of Internal Revenue, were on the brief, for petitioner.

*Messrs. Phil D. Morelock* and *James S. Y. Ivins* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Commissioner of Internal Revenue determined a deficiency in the respondent's income tax for 1918. Upon

the taxpayer's petition the Board of Tax Appeals sustained the Commissioner.[1]   An appeal was taken to the Court of Appeals, which reversed the judgment of the Board, 40 F. (2d) 493.   This court granted certiorari, 282 U. S. 823.

The question presented is whether under § 234 (a) (9) of the Revenue Act of 1918,[2] in determining for any taxable year the capital value, recoverable through depletion allowance, of oil mining properties acquired prior to March 1, 1913, there should be deducted from the March 1, 1913 value of the properties the amount of depletion actually sustained in earlier years, or only so much of such depletion as was allowable as deductions under the revenue acts in force in those years.

The Board of Tax Appeals found the following facts: The taxpayer owned an oil and gas mining lease acquired prior to March 1, 1913.   On that date the recoverable oil in the reserve embraced by the lease was 278,000 barrels, and its value was $156,645, or $0.56347 per barrel.   Between March 1, 1913 and December 31, 1915, it extracted 162,717 barrels of oil, so that at the unit rate mentioned it sustained depletion amounting to $91,686.15.   Its deduction for depletion in computing net income under the

---

[1] 15 B. T. A. 993.

[2] 40 Stat. 1077.   Sec. 234.   (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: . . . (9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of costs up to that date: . . . such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. . . .

Revenue Act of 1913 [3] was computed not by reference to the number of barrels extracted, or to the value of the reserve on March 1, 1913, but by taking five per cent. of the gross income from the sale of oil. The depletion allowance for 1913 to 1915, inclusive, computed by this method, amounted to $6322.02.

In 1916 the taxpayer secured an extension of its lease at a cost of $30,000, whereby its oil reserve was increased by 300,000 barrels. There then remained of the original reserve 115,283 barrels having a value as of March 1, 1913, of $64,958.85. The Commissioner added to this depleted value the cost of the extension of the lease, and added to the remaining oil reserves of the original lease the additional 300,000 barrels then acquired. He thus ascertained a new total recoverable reserve of 415,283 barrels having a basic value or cost of $94,958.85, or $0.22866 per barrel. There were no subsequent additions to the reserves.

In 1916 there were produced under the lease 49,452 barrels of oil, and in 1917, 39,204 barrels, leaving the reserve at January 1, 1918, 326,627 barrels.

A new method of allowance for depletion was adopted in the Revenue Act of 1916.[4] Depletion was sustained under the formula therein prescribed in those two years,

[3] c. 16, § II. B.; 38 Stat. 167. That in computing net income . . . there shall be allowed as deductions: . . . sixth, a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business, not to exceed, in the case of mines, 5 per centum of the gross value at the mine of the output for the year for which the computation is made, . . .

[4] c. 463, 39 Stat. 767–768. Sec. 12 (a). In the case of a corporation . . . such net income shall be ascertained by deducting from the gross amount of its income . . . Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including . . . (a) in the case of oil and gas wells a reasonable allowance for actual reduction in flow and production to be ascertained not by the flush flow, but by the settled production or regular flow; . . .

amounting to $20,272.08. It is agreed that this figure is correct and represents the sustained depletion as well as allowed depletion for those years.

During 1918 there were produced 33,697 barrels of oil. At the unit price adopted by the Commissioner of $0.22866 per barrel, the depletion sustained and allowed for that year was $7705.16. It is this depletion allowance for the year 1918 which is here called in question.

In view of the fact that the depletion actually sustained by the taxpayer between March 1, 1913 and December 31, 1915, was $91,686.15, whereas in conformity with the act of 1913 the deduction actually allowed it as for depletion was only $6322.02, the respondent contended that the unit rate of depletion per barrel for 1918 should have been based upon the original March 1, 1913 value of the reserves, plus the cost of the extension of the lease, and less only that portion of the actually sustained depletion which was in fact allowed pursuant to the terms of the 1913 act. The Commissioner, on the other hand, subtracted from the March 1, 1913, value plus the cost of the extension of the lease, the sustained or actual depletion, holding that the entire depletion actually sustained should be deducted from the original March 1, 1913 value, regardless of whether it was allowable as deductions from the gross income of the years 1913, 1914 and 1915. The Circuit Court of Appeals decided in favor of the respondent.

The parties agree that respondent is not entitled as matter of right to make any deduction from annual income for depletion of the oil extracted and sold during the year. If it may take any such deduction, authority therefor must be found in the statute.[5] It follows that the question for decision is purely one of statutory construction.

It is clear that Congress intended that the lessee of an oil well should be entitled to a reasonable allowance for

[5] *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103.

depletion based upon cost or March 1, 1913 value. It did not however attempt to prescribe a formula for ascertaining it, but expressly delegated that function to the Commissioner of Internal Revenue, who was to make rules and regulations to that end. Pursuant to this authority, regulations were made, which required the deduction of depletion theretofore sustained in ascertaining the capital remaining in any year recoverable by depletion deductions.[6] It is undisputed that the Commissioner calculated the depletion deduction in this case in accordance with the regulations.

The taxpayer contends, however, and the court below held, that the allowance granted was not reasonable—as the act required it should be—because although it reflected the actual depletion in the year 1918, considered by itself, the result of the application of the regulation will fall short of returning to the taxpayer its March 1, 1913, capital tax-free at the date of exhaustion of the oil reserve. It is said that this was the intent of Congress as shown not only by the terms of the act, but by the history of prior legislation. Hence it is claimed that only the depletion allowed under the act of 1913 should be deducted in ascertaining the depletable capital at January 1, 1918. Thus respondent would recover its entire capital tax-free. The Government contends that the depletion allowance provided by the regulations is reasonable.

It is evident that the act of 1913 did not allow enough to return the capital on exhaustion of the reserve. The deduction permitted by that act fell some $85,000 short of

_____

[6]Art. 203. Capital recoverable through depletion deductions in the case of lessee.—(a) In the case of a lessee, the capital remaining in any year recoverable through depletion and depreciation deductions is (1) the value as of the basic date of the lessee's equity in the property plus (2) subsequent allowable capital additions but minus (3) depletion and depreciation sustained, whether legally allowable or not, from the basic date to the taxable year. . . .

what was required in 1913–1915 for that purpose. Was it then the intent of the act of 1918 to permit a deduction from gross income for depletion which would represent not only that year's sustained depletion, but make up for sustained but disallowed depletion in the earlier years? The Government says, and we think rightly, that there is nothing in the terms of the act to indicate any such purpose. The tax is an income tax for 1918, and in the absence of express provision to the contrary, it is not to be supposed that the taxpayer is authorized to deduct from that year's income, depreciation, depletion, business losses or other similar items attributable to other years.[7] The very fact that Congress denied deductions equal to the sustained depletion in the earlier years negatives an intent that they should be allowed in later years, as if for depletion then sustained. The construction adopted by the court below in effect results in including in the taxable year items referable to other years, and is contrary to the theory of a tax for specific years.

The nature of the tax as one for annual periods has been repeatedly mentioned in dealing with its application in various situations.[8] The taxable year 1918, and that only, is involved, and deductions applicable to that year only should be allowed.

The court below recognized that its decision resulted in attributing an excessive value to the reserves remaining in 1918, but thought that *United States* v. *Ludey*, 274 U. S. 295, required it so to hold. That case, however, involved the determination of taxable gain or loss on the

---

[7] As to losses, see *De Loss* v. *Commissioner*, 28 F. (2d) 803; *Burns* v. *Commissioner*, 31 F. (2d) 399. Compare *Newman* v. *Commissioner*, 41 F. (2d) 743.

[8] *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92; *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Fawcus Machine Co.* v. *United States*, 282 U. S. 375.

sale of an oil property. To ascertain gain on a sale of a capital asset, there must be subtracted from the sale price a sum sufficient to restore the value at the date of acquisition (or March 1, 1913).[9] The remainder is income. So in the *Ludey* case it was held that, in order to ascertain the depleted cost, only the allowed depletion should be deducted from the original cost.` Allowed depletion rather than sustained depletion was there the true measure of deduction. But here the question is what allowance Congress intended should be made from the gross annual income of the operation of an oil well. In the one case the question is how much of the capital has already been returned tax-free; in the other how much of the oil reserve remains at the beginning of a taxable year to be depleted over the period remaining until exhaustion. The court below relied on certain statements in the opinion in the *Ludey* case which were applicable in the determination of gain on a sale, but which do not apply in this case, for if the sale of each barrel of oil were a partial sale of the reserve (which it is not) to apply the rule which respondent seeks to deduce from the *Ludey* case would increase the cost or 1913 value of each barrel sold, in determining gain or loss in 1918, beyond its actual cost or 1913 value, taken for barrels sold in prior years. The decision in the *Ludey* case has been adopted in the later statutes as affecting sales of capital assets,[10] but the provision for annual depletion allowance has remained substantially unchanged.[11] This in itself is persuasive evi-

---

[9] *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179.

[10] Act of 1924, c. 234, 43 Stat. 253, 255; Act of 1926, c. 27, § 202 (b) (2), 44 Stat. 9, 12; Act of 1928, c. 852, § 111 (b) (2), 45 Stat. 791, 815.

[11] Act of 1921, § 234 (a) (9), 42 Stat. 227, 256; Act of 1924, § 234 (a) (8), 43 Stat. 253, 284; Act of 1926, § 234 (a) (8), 44 Stat. 9, 42; Act of 1928, § 23 (1), 45 Stat. 791, 800.

dence that Congress has approved the executive construction embodied in the regulations.[12]

Respondent insists that the increasing liberality in the statutory provisions for depletion allowances in the successive Revenue Acts, indicates that Congress never intended that the 1918 act should be so construed or administered as to deprive the taxpayer of the return of his entire capital tax-free. But the increasing liberality was to be applicable in calculating net income for the successive years and we can find no evidence either in the acts or in the regulations, of any intent to increase future depletion allowances to redress the inadequacy of those previously permitted.

It follows that the judgment must be

*Reversed.*

---

[12] *United States* v. *Cerecedo Hermanos,* 209 U. S. 337; *National Lead Co.* v. *United States,* 252 U. S. 140.