## WASHBURN WIRE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2834.

Circuit Court of Appeals, First Circuit.

Nov. 21, 1933.

Harry W. Stelle, Jr., of New York City (Albert R. Palmer, of New York City, on the brief), for petitioner for review.

Carlton Fox, Sp. Asst. to Atty. Gen. (Pat Malloy, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before WILSON and MORTON, Circuit Judges, and HALE, District Judge.

MORTON, Circuit Judge.

This is an appeal by the taxpayer from an adverse decision by the Board of Tax Ap-

peals with respect to income taxes for 1922 and 1923. 26 B. T. A. 464 and 1146. Several different and unrelated questions are presented.

The first question concerns the denial of allowances for depreciation on machinery of the American Electrical Works, a subsidiary of the petitioner, for the years in question. The Electrical Works is an old concern. Prior to 1912 it did not charge off depreciation of its machinery in any regular way. As machines wore out they were repaired or replaced, and the cost thereof was charged to current expense—a method which was followed by many conservatively managed companies until the advent of the income tax rendered more scientific accounting methods necessary. As of January 1, 1912, the book value of this company's machines was set up at $652,000. For 1912 and 1913 it charged off in each year depreciation of 5 per cent. of that amount, with allowances for changes in its machinery during the year. In 1914 the amount was somewhat larger. In 1915 it was raised to 10 per cent. of the book value, and was continued at that amount.

The Commissioner held that as the taxpayer had, by implication at least, claimed a useful life for its machinery of only ten years, the machinery in use on January 1, 1912, had become fully depreciated by the end of 1921. He therefore declined to allow depreciation on the 1912 machinery after that year. His view was that the depreciation occurred year by year in equal amounts, and that the taxpayer must take it year by year, and could not postpone it from one year to another, nor choose when to take it. The machinery was not in fact worn out at the end of 1921; it was still in use during the years in question.

▮ Depreciation, as the word is used in this proceeding, includes two different factors: (1) Wearing out by use, and (2) obsolescence. Change of style or later inventions may make a machine useless for business purposes long before it is worn out; and, on the other hand, a machine which is well cared for and serviced may last much beyond its calculated life. Depreciation or obsolescence is always a question of fact. "Straight line depreciation," so called, which the Commissioner used in this case, is an artificial and conventional method of getting at the loss of value in a manufacturing plant during a prescribed period. It undoubtedly has its place, but it must yield to the facts in any particular case. This was explicitly held in Geuder, etc., Co. v. Commissioner, 41 F.(2d) 308 (C. C. A. 7th) where it was said: "No rule or rate can in all instances accurately measure depreciation. While it may form a safe basis for a prima facie case, it must give way to the facts in each particular case if those facts are presented and are inconsistent with the rate." Sparks, J., page 310 of 41 F.(2d). That case presented a situation not dissimilar to the present one, and it was held that the taxpayer's claim of actual depreciation in the years in question must prevail over the conventional depreciation allowed by the Commissioner and approved by the Board of Tax Appeals. In Jewett & Co. v. Commissioner, 61 F.(2d) 471, the Court of Appeals for the Second Circuit dealt with a similar situation in the same way. Burnet v. Thompson Oil & Gas Co., 283 U. S. 301, 51 S. Ct. 418, 75 L. Ed. 1049, was the converse of these cases. There the amount of depletion during the earlier period (1913–1915) was absolutely fixed —the oil had been pumped and sold. The law at that time allowed only 5 per cent. for such depletion, which was insufficient. It was held that the rest of the depletion could not be transferred to a later year, when the law had been so changed as to allow it.

We think the taxpayer was justified in extending the period of depreciation to accord with the facts under article 166 of Treasury Regulation 62, which provides as follows:

"If it develops that an error was made in estimating the useful life of the property, the plan of computing depreciation should be modified and the balance of the cost of the property, or its fair market value of March 1, 1913, not already provided for through a depreciation reserve or deducted from book value, should be spread over the estimated remaining life of the property."

The evidence on this point in the present case is not very satisfactory. It amounts, in substance, to the judgment of the taxpayer as evidenced by its entries on its books in 1912, 1913, and 1914, on the one side, and the Commissioner's formula, based on later book entries by the taxpayer, on the other side. There is nothing to indicate that the taxpayer's entries were not made in good faith, or not based on honest judgment. It does not appear to what extent the machinery in question was operated during the different years, nor as to whether advances in the art, or new inventions, affected its usefulness or value. It does not follow, we think, that, because in the later years the petitioner took an annual depreciation of 10 per cent. on its machinery, the actual depreciation in each of the years 1912–1914 was that amount. It is common knowledge that metal working industries were pressed with business during the War. Neither the Commissioner nor the Board of Tax Appeals appears to have inquired into the actual depreciation for the different

years; and their decisions are not based upon findings that the petitioner's claim is unfounded in fact.

■ A contemporaneous estimate of depreciation, made by a manufacturer with respect to his own machinery, and entered on his books, is some evidence of its correctness. In Appeal of Kansas Milling Co., 3 B. T. A. 709, it was said in the opinion: "There is no evidence before us, that such assets suffered any greater depreciation than the amount so charged off, or that the Commissioner's computation is more nearly correct than the taxpayer's. In these circumstances, we are of the opinion that no change should be made either in the asset accounts or in the depreciation reserve as they stand in the taxpayer's books as of January 1, 1917."

■ In our opinion, this view is sound and applies to the present case. Of course, taxpayers should not be permitted to shuffle their accounts so as to avoid taxation. But, where no purpose of that sort appears, the taxpayer's judgment on matters of fact, acted on and entered in its books, should not be disregarded and set aside without some more substantial reason than the conventions of accounting, especially when, as here, these lead to a result contrary to fact, however it be viewed. The machinery was not worn out, nor had full depreciation ever been taken on it. On this point we are unable to agree with the conclusion of the Board of Tax Appeals.

■ The next question is whether the taxes in dispute were properly assessed against the petitioner. It depends on whether there was an agreement between the petitioner and its subsidiaries that it would pay the income taxes on the entire group. Whether such an agreement existed is to be determined on undisputed facts. The controlling statute says:

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each." Revenue Act 1921, c. 136, § 240 (b), 42 Stats. 260.

For both 1922 and 1923 the petitioner as parent company made consolidated returns which included the income and losses of its subsidiaries. For both years the taxes shown on the face of the return were assessed to, and paid by, the petitioner. The evidence of an agreement on which the Commissioner relied in so assessing the taxes was found in statements in the so-called "information returns" filed by each of the subsidiaries as follows:

"The Department prefers that the entire tax shown on a consolidated return be paid by the parent or principal reporting corporation, instead of being apportioned among the corporations composing the affiliated group.

"If apportionment is made, state the amount of income and profits taxes for the taxable period to be assessed against subsidiary or affiliated corporation making this return."

Answer: "None."

No evidence was introduced to control or deny these statements. The information returns were submitted in connection with the principal return made by the petitioner. We cannot doubt that it knew the statements of its subsidiaries and approved them. It indicated no objection to the assessment of the original taxes against it. We think it clear that the Commissioner was justified by the statements in the returns and by the petitioner's conduct, in inferring that there was an agreement under the statute whereby all taxes were to be paid by the petitioner. He was therefore right in assessing the deficiency taxes against it. The decisions relied on by the petitioner in which either no information returns were submitted, or the pertinent question in them was left unanswered, rest on materially different facts.

■ The next question concerns the 1923 tax; but it involves the powers of the Board of Tax Appeals. The case was, in the first instance, argued and submitted to the Board for decision without the 1923 information returns having been put in evidence. The Board handed down written findings of fact and opinion in which it held that, on the evidence before it, there did not appear to be any agreement that all taxes for 1923 would be paid by the petitioner. Before any order had been entered on this decision, the Board on motion of the Commissioner reopened the case and allowed him to put in evidence the 1923 information returns. In view of them, the Board reversed its decision on this point. The petitioner contends that the Board had no power to reopen the case and admit additional evidence after having rendered a decision.

The statute says:

"A decision of the board shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the board." Revenue Act

662

1924, § 906 (d) as added by Revenue Act 1926, c. 27, § 1000, 44 Stat. 107 (26 USCA § 1217 note).

In at least two places in the statutes rehearings before the Board of Tax Appeals are referred to. In each instance the words used are, "if claim therefore is asserted by the Commissioner at or before the hearing or a rehearing." Revenue Act 1926, c. 27, § 274 (e), 26 USCA § 1048c, and Revenue Act 1928, c. 852, § 272 (e), 26 USCA § 2272 (e). In Griffiths v. Commissioner, 50 F.(2d) 782 (C. C. A. 2), it was held that a motion for rehearing, made after the formal order of the Board of Tax Appeals had been entered, tolled the limitation on petitions for review. In view of the explicit statutory provisions that the entry of the order shall be the date of decision, and of the references to rehearings above quoted, we do not doubt that, up to the entry of the order, the Board has power to reopen a case and revise its views and findings. Whether the Board may still do so after the entry of the formal order is a question on which we express no opinion.

■ The final point made by the petitioner, viz., that the Board had no right to consider the final settlement proposed by the Commissioner, because the draft of it was not filed within the time fixed by the rules of the Board, is too obviously without merit to require discussion. See Board of Tax Appeals v. United States, 59 App. D. C. 161, 37 F.(2d) 442.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.