JEFFERSON STANDARD LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43199. Promulgated November 8, 1935.

*Julius C. Smith, Esq.*, and *D. E. Buckner, Esq.*, for the petitioner.
*Charles P. Reilly, Esq.*, and *Dean P. Kimball, Esq.*, for the respondent.

OPINION.

TRAMMELL: When this proceeding formerly was before us we found it unnecessary, in view of our decision as to the invalidity of the requirements of section 245 (b) of the Revenue Act of 1926, to determine what the book value of the petitioner's home office building was at the end of the taxable year or what amount was to be included in the petitioner's gross income with respect to the rental value thereon, and we so stated in our report.

The respondent appealed our holding with respect to the invalidity of the section.

Section 245 (b) of the Revenue Act of 1926 provides as follows:

No deduction shall be made under paragraphs (6) and (7) of subdivision (a) on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall be not less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied.

The opinion of the Circuit Court of Appeals reversing our holding reads in part as follows:

The book value of this building (the petitioner's home office building) was $3,069,498.47. The company received as rents from tenants during the year the sum of $226,262.73. It incurred expense in connection with the building amounting to $80,645.77 and the depreciation thereon was $34,434.00. The question involved is whether the company can deduct this expense and depreciation from its gross income without accounting for the rental value of the building as income as provided by the section of the statute to which we have just referred. The Board of Tax Appeals answered this question in the affirmative, on the ground that this section of the statute was unconstitutional; but in view of the recent decision of the Supreme Court in *Helvering* v. *Independent Life Ins. Co.*, — U. S. —, 54 S. Ct. 758, the decision of the Board must be reversed.

*Reversed.*

The mandate of the court remanding the cause to us reads in part as follows:

On Consideration whereof, It is now here ordered and adjudged by this court that the decision of the said Board of Tax Appeals in this cause, be, and the same is hereby reversed; and that this cause be, and the same is hereby remanded to the United States Board of Tax Appeals for further proceedings in accordance with the opinion of the Court filed herein.

\*      \*      \*      \*      \*      \*      \*

You, therefore, are hereby commanded that such further proceedings be had in said cause, in accordance with the opinion and the judgment of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said petition to review notwithstanding.

Subsequent to the receipt of the mandate the parties filed recomputations of the petitioner's tax liability in accordance with their respective interpretations of the opinion and mandate of the court. The recomputations were not in agreement and oral argument was had thereon. The difference in the recomputations arose from the petitioner basing its computation upon the value of its home office building as originally entered upon its books less the amount of depreciation accrued thereon down to the end of the taxable year, and the respondent basing his computation upon the value of the petitioner's home office building as originally entered upon its books but without taking accrued depreciation into consideration. Counsel for the parties agreed that this was the only matter as to which they were in disagreement. Counsel for the respondent admitted that the point as to which the parties were then in disagreement was not a question on appeal before the Circuit Court of Appeals, the question there being the correctness of our holding on the constitutionality of section 245 (b) of the Revenue Act of 1926, and that the decision of the court did not touch upon the point in disagreement.

Subsequent to the oral argument we, of our own motion and for our information, ordered that the parties submit supplemental briefs discussing and explaining the term "book value" as used in section 245 of the Revenue Act of 1926; that the question of a uniform accounting system, if any, adopted and used by life insurance companies be set forth and explained; and that any further evidence deemed necessary for the purpose of explaining and setting forth any facts relating to an accounting system in general use by life insurance companies at the time of the passage of the Act of 1926 or the accounting system used and adopted by the petitioner might be introduced if motion to that effect were duly filed.

The petitioner did not file any brief pursuant to the order. The respondent, however, filed a brief in which he contends that we have no authority under the mandate to consider the question of book value. In support of his position the respondent urges that since

the court stated in its mandate that "this cause be, and the same is hereby, remanded to the United States Board of Tax Appeals for further proceedings in accordance with the opinion of the court filed herein" and stated in the opinion that "The book value of this building was $3,069,498.47" we have no authority to consider the question of book value and that the only question remaining for our determination is whether his recomputation is or is not in accord with the opinion of the court.

As heretofore indicated the pleadings in the proceeding presented for determination the question of the book value of the home office building and property occupied by the petitioner. While our findings of fact contained in our report in the proceeding set out in accordance with the evidence in the case certain facts respecting the petitioner's accounting system and the amount at which such property was shown on its books, we made no finding as to book value and expressly stated in the report that a determination of the question of book value was not being made since under our decision on another point the question was moot. An examination of the petition for the review of our decision filed by the respondent shows that it contained no assignment of error with respect to the question of book value. The opinion of the Circuit Court of Appeals in stating the question involved shows that the court considered only the question of the correctness of our holding as to the constitutionality of section 245 (b).

Notwithstanding the fact that the court previously in its opinion had made the statement that "the book value of this building was $3,069,498.47" (the amount at which the building was originally entered on petitioner's books), it seems clear from the court's later statement of the question before it and its disposition thereof that the court considered it was deciding only the one question, namely, the correctness of our decision as to the constitutionality of the statute, and none other. Considering the language of the mandate relied on by the respondent in connection with the foregoing, it is clear that the mandate never attempted to make a decision on any issue not considered in the court's opinion.

. The position taken by the respondent in his brief as to the effect of the court's opinion is contradictory to that taken by him at the time of the oral argument on the recomputations when he conceded that the point in which the parties are in disagreement was not a question before the Circuit Court of Appeals and was not touched upon by it in its decision. Whatever his reason for this change of position, we think it is clear from the record that the Circuit Court of Appeals never attempted to find the book value of the home office building or otherwise to dispose of the issue as to book value. Since we had

never made any finding as to book value the court would have been without authority to make such finding even if it had attempted to, and as the respondent contends that it did. Respecting the authority of Circuit Courts of Appeal to make findings of fact in cases arising in the Board, the Supreme Court in *Helvering* v. *Rankin*, 295 U. S. 123, said:

Fourth. The Court of Appeals is without power, on review of proceedings of the Board of Tax Appeals, to make any findings of fact. "The Board of Tax Appeals is not a court, it is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the board has been had and decided." *Old Colony Trust Co.* v. *Commissioner of Internal Revenue*, 279 U. S. 716, 725, 49 S. Ct. 499, 502, 73 L. Ed. 918. The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to support the findings made. See *Phillips* v. *Commissioner of Internal Revenue*, 283 U. S. 589, 599, 600, 51 S. Ct. 608, 75 L. Ed. 1289; *Burnet* v. *Leininger*, 285 U. S. 136, 138, 52 S. Ct. 345, 76 L. Ed. 665; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289, 294, 55 S. Ct. 158, 79 L. Ed. —. Unless the finding of the Board involves a mixed question of law and fact, the court may not properly substitute its own judgment for that of the Board. If the Board has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the further procedure is to remand the case for further proceedings before the Board. Compare *Helvering* v. *Taylor*, 293 U. S. 507, 55 S. Ct. 287, 79 L. Ed. —; *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299, 308, 53 S. Ct. 161, 77 L. Ed. 318. And the same procedure is appropriate even when the findings omitted by the Board might be supplied from examination of the record.

Since the question of book value of property owned and occupied in part by the petitioner was properly presented by the pleadings and has never been decided by us, and as its determination is essential to a correct determination of the petitioner's tax liability, we think it is properly before us and that we have authority to determine it. The contention of the respondent on this point, therefore, is denied.

In his brief filed pursuant to our order the respondent states that if we should hold that we have authority to determine the question of book value of the property in question and the rental value of the space occupied by the petitioner then, as an alternative argument, he contends that the rental value of the space occupied by the petitioner was not less than the amount shown in the deficiency notice, $11,-596.98. In his amended answer he alleges that rental value of such space was $32,200. In this connection he concedes that the term "book value" as used in section 245 of the act means the cost less accrued depreciation and that the book value of the petitioner's home office building at the end of 1927 was $2,940,018.47 which was the amount used by the petitioner in its return.

This concession of the respondent amounts to no more than a mere statement of his opinion as to the legal significance of the term "book

value " and would not be binding on us in event we were disposed to disagree with it. However we are not disposed to disagree, but think this interpretation of the term is correct. While the legislative history of the term throws no light on the question, there is, however, nothing in it to indicate that the term was used in any unusual or extraordinary sense. The petitioner's books are kept on the cash basis and when a property is acquired it is entered thereon at cost and remains thereon at that amount unless because of improvements or some other similar change of conditions adjustment is made necessary. In common with the practice of insurance companies generally, depreciation is carried in a memorandum account and in the reports to the insurance commissioners of the various states in which business is conducted the amount of such depreciation is shown among the liabilities. So far as a determination of the financial condition of the company is concerned, this method produces the same result as if the asset account were actually written down by the amount of yearly depreciation. While heretofore we have not had occasion, nor have the courts so far as we can ascertain, to consider the meaning of the term as used in paragraph (b) of section 245 of the applicable act, we have considered a similar question under an earlier act.

In *Standard Life Insurance Co. of America*, 13 B. T. A. 13; affd., 47 Fed. (2d) 218, we were called upon to determine the book value of the taxpayer's home office building for the purpose of determining the taxpayer's deduction for investment expenses under section 245 (a) (5) of the Revenue Act of 1921, which reads in part as follows:

\* \* \* *Provided*, That if any general expenses are in part assigned to or included in the investment expenses, the total deduction under this paragraph shall not exceed one-fourth of 1 per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year.

In that case the taxpayer in 1917 purchased its home office building and assumed a mortgage thereon of $400,000. Between the date of purchase and 1921 the taxpayer paid off $50,000 of the mortgage. From the time of purchase to the end of 1921 the taxpayer made certain permanent improvements to the property, bringing its depreciated cost inclusive of the mortgage up to $537,761.97 at December 31, 1921. At the end of 1921 the property was carried on the books of the taxpayer at its net investment figure, namely, $187,761.97, or its depreciated cost of $537,761.97 less the unpaid amount of the mortgage, $350,000. The amount of $187,761.97 was the book value at which the taxpayer included the property in its report to the Insurance Department of Pennsylvania, the state in which the taxpayer was incorporated. In determining the taxpayer's invested assets under section 245 (a) (5) of the Revenue Act of 1921 the respondent allowed a value for the property of only $187,761.91. The taxpayer

sought to include the property in its invested assets at the depreciated cost thereof inclusive of the unpaid amount of the mortgage. In sustaining the respondent's determination of a book value for the property of $187,761.91 and in denying the taxpayer's contention that this amount should be increased by the unpaid portion of the mortgage, we said:

> * * * We are of the opinion that it can not consistently be said that the book value of the invested assets is inclusive of an unpaid encumbrance. The interest on the unpaid encumbrance is deductible under section 245 (a) (8) of the Revenue Act of 1921. Why, therefore, should the amount of the encumbrance be included as an invested asset for the purpose of determining the investment expenses under subdivision (5)? We are of the opinion that the conclusion reached by the respondent upon this point is correct.

In that case no question was raised as to the term "book value" meaning anything else except cost less depreciation, and we reached the conclusion that such was its meaning without a discussion of the matter.

We find nothing in the act here involved to indicate that the term "book value" as used in section 245 (b) is employed in any different sense to that in which it is used in section 245 (a) (5) of the Act of 1921. If as in that case the amount of the unpaid portion of a mortgage on a home office building is not to be included as a part of the book value of such building for the reason that the interest on such mortgage is deductible in determining taxable net income, we know of no reason why book value is to include an amount representing depreciation sustained on a home office building and deductible in determining net income.

We therefore conclude that the term "book value" as used in section 245 (b) of the applicable act means cost less accrued depreciation. In conformity with this conclusion we have found as a fact that the book value of the petitioner's home office building at the end of the taxable year was $2,940,018.47.

Having reached the foregoing conclusion, there remains for determination the question of the amount to be included in income by the petitioner on account of that portion of its home office building which it occupied.

The respondent's determination of the rental value to be included in the petitioner's income on account of the portion of the building occupied by it, as set out in our findings, shows that it was based on a rental which, together with the amount received from tenants after the allowance of certain specified deductions, would provide a net income of not less than 4 percent of the book value of the property at the end of the taxable year. The measure used by the respondent in determining the amount of rental to be included, therefore, was

the minimum required by the act on the book value as determined by him.

While conceding that the book value determined by him was excessive to the extent that it represented accrued depreciation, the respondent's principal position is that the rental value of the space occupied by the petitioner was $32,200; that since in the determination of the deficiency he determined the value of such space to be only $11,596.98, the value so determined should be increased by $20,603.02 and the petitioner's taxable income and tax liability increased accordingly. In support of his contention the respondent urges that the provisions of section 245 (b) relating to the rental value that shall be reported in order that certain deductions be allowed are provisions as to the minimum rental to be reported and not the maximum rental.

The petitioner disagrees with the position taken by the respondent. It contends that the respondent's request for an increased deficiency was not timely made; that since it reported in its return a rental value for the space occupied by it of $45,599.25 and as its deduction of $39,181.46 taken for real estate taxes on the building for 1927 was disallowed, its gross income should be increased only by the difference between these two amounts, or $6,417.79, as representing the rental value of the space occupied by it and that at most its taxable income should not be increased by more than $11,596.98 representing the rental value of the space determined by the respondent when determining the deficiency. It further contends that the inclusion of any amount in excess of $11,596.98 would result in the imposition of a direct tax, prohibited by the decision in *Helvering* v. *Independent Life Ins. Co.*, 292 U. S. 371.

The parties have stipulated that the value for rental purposes of the space occupied by the petitioner in its home office property in the taxable year was $32,200. In conformity with this stipulation we have found as a fact that such value was of that amount.

At this point we will consider the petitioner's objection as to the timeliness of the respondent's action in seeking to have the stipulated rental value of the space occupied by the petitioner included in petitioner's gross income. The petitioner urges that, since the proceeding has been to the Circuit Court of Appeals and has come back and since at all times subsequent to the determination of the deficiency down to the time of the hearing at which the parties submitted their stipulation showing a rental value of $32,200 for the space occupied the respondent has contended that the rental value of the space was $11,596.98 as determined by him in the deficiency notice, he is precluded from asking that we find such value to be $32,200, and that the deficiency should be increased accordingly. The respondent contends that, since the statute permits the Board to redetermine a

deficiency in excess of that determined by him if claim therefor is made at or before a hearing or a rehearing and since he made claim for the increased deficiency at the hearing for the taking of evidence as to the rental value of the space occupied by the petitioner, his claim was timely made and should be allowed.

In the course of his argument the petitioner refers to the proceeding as now being before us under Rule 50. That, however, is not the situation. Although upon receipt of the mandate from the Circuit Court of Appeals after its reversal on the one issue that we had decided the parties were inadvertently directed to submit recomputations of the petitioner's tax liability pursuant to the mandate, there remained at that time undecided two issues presented by the pleadings. A determination of these issues was essential before the proceeding properly could be placed under Rule 50. Until these issues are determined the proceeding in so far as such issues are involved is in the same status as it was prior to the entry of our former report at 25 B. T. A. 1335. The fact that a decision determining a deficiency in tax was entered subsequent to argument on the computations of petitioner's tax liability submitted by the respective parties would not alter the situation, since the entry of such decision was just as inadvertent as the direction to the parties to submit recomputations. Further, when the respondent promptly after the entry of the decision pointed out by motion that the two issues remained undecided, such decision was duly vacated.

In *Helvering* v. *Edison Securities Corporation*, 78 Fed. (2d) 85, the Board had promulgated its report wherein it had made a determination of the issues presented. Under its determination of one of the issues the profits from a certain transaction not theretofore considered taxable by the respondent or the petitioner became taxable. Subsequent to the promulgation of the report the respondent moved for a rehearing at which to make claim for an increased deficiency. This was denied and the petitioner filed its recomputation of its tax liability under Rule 50. The respondent then filed written claim for an increased deficiency which was denied. Entry then was made of the final decision determining a deficiency. In reversing our action the court said:

> The Board refused to entertain the claim for increased deficiency seemingly on the ground that the power given it by Section 274 (e) is to be exercised only if the claim is asserted by the Commissioner at or before the hearing or a rehearing of the case, and because in the opinion of the Board, this stage had been passed when the Commissioner set up the claim in this case. We think that the power still persisted, for there seems to be no reason why the word "hearing" should not be given a significance broad enough to include the whole proceeding down to the final decision. Ordinarily a hearing in equity embraces the decision also. *Joseph Dry Goods Co.* v. *Hecht*, 120 F. 760, 763;

*American Grain Separator Co.* v. *Twin City Separator Co.*, 202 F. 202, 205; *Chicago Ry. Equip. Co.* v. *Blair*, 20 F. (2d) 10; *International Banding Machine Co.* v. *Commissioner*, 37 F. (2d) 660. But here the purpose is manifest to give the taxpayer an opportunity to answer and resist the claim before it is made effective by the action of the Board. If this is done, a claim of increase may be made and considered with propriety, whether it is presented during the taking of the evidence or in the period allowed for oral arguments, or written briefs, or even subsequently during the hearing under Rule 50; in short, at any time before or after the filing of the Board's findings of fact until the decision and judgment of the Board has been entered; or even later, in the event of a rehearing.

This statement, however, must be taken with the qualifications that the power to receive the claim should not be exercised unless a reasonable opportunity to oppose it is given to the taxpayer, and unless it is presented in accordance with reasonable rules laid down by the Board. If the question involved in the increase has been actually raised during the trial, and the taxpayer has presented his evidence and his views on the point, or has been given a chance to do so, the claim may be received at any time before the decision and allowed therein, if found to be correct; but the taxpayer ought not to be taken by surprise. Nor should the Board be required to receive a claim unless it is presented seasonably, in accordance with its rules, as for instance, Rule 50, which forbids the parties to use the hearing on the computation of deficiency, in accordance with the Board's announced findings, for the consideration of matters disposed of therein, or of new issues. Compare *Davison* v. *Commissioner*, 60 F. (2d) 50; *Weiller* v. *Commissioner*, 64 F. (2d) 480.

In view of the foregoing holding of the Circuit Court to which an appeal in this proceeding would lie, we think the respondent's claim for an increased deficiency was timely filed. It was filed at a hearing held for the purpose of permitting the parties to submit whatever evidence they wished to submit as to the actual rental value of the space occupied by the petitioner and at which they submitted a stipulation showing a value in excess of that determined by the respondent in the deficiency notice. Both parties were represented by counsel at this hearing and the petitioner was given full opportunity to oppose the respondent's claim which is grounded on the rental value stipulated by the parties.

In *Helvering* v. *Independent Life Insurance Co.*, *supra*, the Supreme Court had before it the question as to whether the provisions of section 245 (b) of the Revenue Acts of 1921 and 1924, the identical provisions being contained in section 245 (b) of the Act of 1926 here involved, violate the rule that no direct tax shall be laid except by apportionment. In holding that they did not the Court pointed out that, if the statute levied a tax on the part of the building occupied by the owner or upon the rental value of that space, such tax would be a direct tax which could not be sustained. After further pointing out that the rental value of a building used by the owner thereof does not constitute income within the meaning of the Sixteenth Amendment, the Court said:

Earlier acts taxed life insurance companies' incomes substantially the same as those of other corporations. Because of the character of the business, that method proved unsatisfactory to the Government and to the companies. The provisions under consideration were enacted upon the recommendation of representatives of the latter. As rents received for buildings were required to be included in gross and expenses chargeable to them were allowed to be deducted, it is to be inferred that Congress found—as concededly the fact was—that the annual net yields from investments in such buildings ordinarily amounted to at least 4 per cent. of book value. Where an insurance company owns and occupies the whole of a building it receives no rents therefor and is not allowed to deduct the expenses chargeable to the building. Where part is used by the company and part let, the rents are required to be included in the gross, but expenses may not be deducted unless, if it be necessary, there is added to the rents received an amount to make the total sufficient, after deduction of expenses, to leave 4 per cent. of book value. All calculations contemplated by section 245 (b) are made subject to that limitation. Congress intended that the rule should apply only where rents exceed such 4 per cent. Where they are less than that, addition of the prescribed rental value and deduction of expenses operate to increase taxable income. The classification is not without foundation.

The company is not required to include in gross any amount to cover rental value of space used by it, but in order that, subject to the specified limitation, it may have the advantage of deducting a part of the expenses chargeable to the building, it is permitted to make calculations by means of such an addition. The statute does not prescribe any basis for the apportionment of expenses between space used by the company and that for which it receives rents. The calculation indicated operates as such an apportionment where the rents received are more than 4 per cent. of book value, but less than that amount plus expenses. In such cases the addition, called rental value of space occupied by the company, is employed to permit a deduction on account of expenses. That, as is clearly shown in the dissenting opinion, supra, page 473 of 67 F. (2d) is the arithmetical equivalent of lessening the deduction by the amount of the so-called rental value.

* * * As shown above, the prescribed calculation, section 245 (b), is in substance a diminution or apportionment of expenses to be deducted from gross income under the circumstances specified. See *Anderson* v. *Forty-Two Broadway Co.*, 293 U. S. 69, 36 S. Ct. 17, 60 L. Ed. 152.

Unquestionably Congress has power to condition, limit, or deny deductions from gross income in order to arrive at the net that it chooses to tax. *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301, 304, 51 S. Ct. 418, 75 L. Ed. 1049; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546; *Brushaber* v. *Union Pac. R. Co.*, supra, 23, 24 of 240 U. S., 36 S. Ct. 236.

As indicated by the foregoing, the calculation prescribed in section 245 (b) has for its purpose the lessening or apportioning of the amounts for taxes, expenses and depreciation that a life insurance company occupying a part of its building may deduct from gross income by the amount of the rental value that is to be included on account of the space occupied by the company. The amount included in gross income on account of the space occupied by the company serves as a reduction of or as an offset to the total of the amounts deductible for taxes, expenses and depreciation. As pointed

out by the Supreme Court, a life insurance company occupying a part of the property owned by it is not required to include in its gross income any amount to cover the rental value of space used by it, but, in order for it to obtain deductions for taxes, expenses and depreciation, rental value of the space occupied must be included in gross income.

This brings us to a consideration of the question as to whether the provision in section 245 (b) that " Such rental value shall be *not less than* a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied ". (italics supplied) was intended as the basis for computing a minimum rental value or a maximum rental value. The respondent takes the position that it was intended as a basis for computing the minimum rental value that a life insurance company could include in order to get the benefit of the deductions specified and that where the actual or true rental value, as in the instant case, exceeds such minimum the actual or true rental value is to be included subject to the limitation that it shall not exceed the deductions for taxes, expenses and depreciation. The petitioner takes the position that the proper rental value to be reported under the statute is that which in addition to rents from tenants provides an amount, after deducting taxes, expenses and depreciation, equal to 4 percent of book value of the property at the end of the taxable year.

The first sentence of section 245 (b) is: " No deduction shall be made under paragraphs (6) and (7) [relating to taxes, expenses and depreciation] of subdivision (a) on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income *the rental value* of the space so occupied." (Italics supplied.) The next sentence provides that " Such rental value shall be not less than a sum ", etc. Considering the two sentences together it is our opinion that the second sentence provides the minimum rental value that is to be reported if any deduction is to be allowed with respect to taxes, expenses and depreciation. The first sentence provides that no deduction shall be allowed unless " the rental value " of the space occupied is included in gross income, while the second provides that such rental value shall be " not less than " a sum computed on a prescribed basis. It seems to us that if Congress had intended the second sentence to have the meaning contended for by the petitioner it would have omitted the words " not less than " and enacted the sentence to read " Such rental value shall be a sum which " etc. As

stated by the Supreme Court in *Helvering* v. *Independent Life Ins. Co., supra,* the provisions of the acts there involved, which are identical with those here involved, were enacted upon the recommendation of representatives of the life insurance companies and that Congress found that investments of the companies in buildings " ordinarily amounted to at least 4 per cent. of book value." This we think is a further reason supporting the view that the rental value provided for in the second sentence of section 245 (b) was intended as a minimum.

In reaching the foregoing conclusion we are not unmindful of the example set forth by the Supreme Court in the final paragraph of footnote 3 in *Helvering* v. *Independent Life Ins. Co., supra.* This example seems to lay down the proposition that, where the rents received (after deducting taxes, expenses and depreciation) equal 4 percent of the book value of the property, the rental value of the space occupied by the company need not be reported. The example finds support in the statement in the body of the decision which reads: " Where part is used by the company and part let, the rents are required to be included in the gross, but expenses may not be deducted unless, *if it be necessary*, there is added to the rents received an amount to make the total sufficient, after deduction of expenses, to leave 4 percent of book value." (Italics supplied.) The inference contained in the words " if it be necessary " seems to be that no rental value need be added if the rents received from tenants are alone sufficient (after deducting taxes, expenses and depreciation) to leave 4 percent of book value. We think it is clear, however, that this example in the footnote and the inference contained in the language of the Court are not in harmony with the express wording of the statute involved that " no deduction shall be made * * * unless there is included in the return of gross income the rental value of the space so occupied " by the company and that " such rental value shall be not less than a sum which " etc. The Court did not there have before it the question presented here. It is our view that the rule of construction announced by the Court is to be confined to cases where the computation provided by section 245 (b) serves to increase the rentals entering into taxable net income beyond the amount actually received as rents from tenants. Until such a result follows from the application of the language of the statute no taxes are imposed on the owner's building or upon the rental value of the space occupied therein by the owner or upon any part of either.

In view of the conclusions reached by us above we are unable to sustain the petitioner's contention that the proper amount to be included in its gross income as representing the rental value of the

space occupied is $6,417.79, or the difference between the rental value reported by it in its return and the amount of real estate taxes on the building for 1927 which were deducted in the return but were disallowed, such disallowance being conceded proper by petitioner. Nor are we able to sustain the contention that the amount determined by the respondent as the rental value in the deficiency notice is the proper amount.

Inasmuch as $32,200 was the rental value of the space occupied by petitioner in its home office building and the inclusion of that amount in its gross income will not, after the deduction of expenses and depreciation result in the amount of rentals entering into its taxable net income being increased beyond the amount actually received from tenants as rent or even by as much as either of the amounts deductible as expenses and depreciation we hold that the proper amount to be included in the petitioner's gross income on account of the space occupied by it in its home office building is $32,200. In determining the deficiency the respondent determined the amount to be included in gross income as the rental value of such space to be $11,596.98, and, as we hold that the amount to be included is $32,200, the respondent's claim that the amount determined by him should be increased by $20,603.02 and the deficiency increased accordingly is granted.

Reviewed by the Board.

*Decision will be entered under Rule 50.*