## COMMISSIONER OF INTERNAL REVENUE v. LAGUNA LAND & WATER CO. et al.

### and

## LAGUNA LAND & WATER CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9556.

Circuit Court of Appeals, Ninth Circuit.

March 1, 1941.

---

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., and Sewall Key, Michael H. Cardozo, IV, and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for petitioner.

John E. Biby, of Los Angeles, Cal., for respondent.

Before GARRECHT, DENMAN, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This case arises upon cross-petitions of the Laguna Land and Water Company and Laguna-Maywood Land Corporation, wholly owned subsidiary of Laguna Land and Water Company, and the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals. The interests of Laguna Land and Water Company and Laguna-Maywood Land Corporation are identical and they are hereafter referred to as taxpayer. The Board's decision concerned certain claimed deductions disallowed by the Commissioner in his proposed assessment of taxpayer's income for the tax year 1931. The Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 351 et seq., controls the tax computation.

A. The Commissioner claims error in the Board's decision in allowing a deduction of a proportioned allocated cost from the receipts in 1931 of sales of subdivided lots of a real estate enterprise which had been disposing of parcels of a sizable tract of land over a period of many years. The property was bought before March 1, 1913. In this court there is no dispute as to its value on that date nor as to its proportionate amount allocated to each parcel as a cost base in determining the gain on its sale in the tax year 1931—that is if any cost deduction at all is allowable for that tax year.

The Commissioner claims that the Board erred in deducting any 1913 cost base in determining the gain for the lots sold in 1931 because in the prior tax years he had assessed taxpayer's income by fixing an excessive 1913 cost base on other lots sold in those years, whereby the aggregate of the 1913 base allowances the Commissioner had made prior to 1931 had exceeded the total 1913 cost basis of all the lots in the subdivision, sold and unsold,—that is, the original cost of the tract.

The Board recognized that Congress by repeated re-enactments of the taxing statute after interpretation in a Treasury Regulation specifically controlling such real estate transactions had made it the law that in the "Determination of amount of gain or loss." in the "sale" of property under sections 111 and 113 of the controlling Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, pages 376, 380, the cost base is that of Treasury Regulations 74, promulgated under the 1928 Act:

"Art. 61. *Sale of real property in lots.* —Where a tract of land is purchased with a view to dividing it into lots or parcels of ground to be sold as such, the cost or other basis shall be equitably apportioned to the several lots or parcels and made a matter of record on the books of the taxpayer, to the end that any gain derived from the sale of any such lots or parcels which constitutes taxable income may be returned as income for the year in which the sale is made. This rule contemplates that there will be a measure of gain or loss on every lot or parcel sold, and not that the capital in the entire tract shall be returned. The sale of each lot or parcel will be treated as

a separate transaction, and gain or loss computed accordingly."

■ This regulation is obviously within the Board's regulatory powers. It appears as Article 117 of Treasury Regulations 33 (1918 edition), promulgated under the Revenue Acts of 1916 and 1917; as Article 43 of Treasury Regulations 45, 62, 65, and 69, promulgated under the Revenue Acts of 1918, 1921, 1924, and 1926, respectively, and as Article 61 of Treasury Regulations 74, promulgated under the Revenue Act of 1928. The respective statutes re-enact substantially identical provisions for taxing sales and hence, what was at first a regulation, acquires "the effect of law,"[1] and has all "the force of law."[2]

■ What has the "effect" and "force" of law is the law—that is to say, the law applicable to this case is as if the taxing statute had been amended to include the regulation. Hence, to ignore its specific provisions for the "Sale of real property in lots" and reason only from the language of the tax act applying generally to other deductions, not subject to that regulation, is as futile as to argue concerning a former Act of Congress and ignore it as amended.

Construing the regulation the Supreme Court held:

"* * * Profits made in the business of liquidation are taxable in the same way and to the same extent as if made in an expanding business. Nor is it of legal significance that the liquidation was not completed until 1925 and that until completion of the liquidation it could not be known whether the business venture, taken as a whole, had been profitable. The federal income tax system is based on an annual accounting. Under that law the question whether taxable profits have been made is determined annually by the result of the operations of the year.

"Purchasing real estate, subdividing and selling it in parcels is, in essence, a liquidating business. The claim has been repeatedly made that no income was realized until the investment was recouped; but the Board of Tax Appeals has uniformly held in accord with Article 43 of Regulations 45 (and later regulations) that the cost of the real estate must be apportioned among all the lots, and income returned upon the sales in each year, regardless of the number of lots remaining undisposed of at the close of the tax year. * * *" Heiner v. Mellon, 304 U.S. 271, 275, 58 S.Ct. 926, 928, 82 L.Ed. 1337.

■ There can be no doubt of the purposes of Congress in re-enacting its capital gain income tax provisions and thereby making this regulation its law with respect to tax gains on sale of lots from larger subdivided tracts. What this law does is, for tax purposes, to make each lot sold as if separately purchased by the taxpayer.

Since taxing laws are for immediate future national budgets, the real estate subdivision law gives a return at once on any parcel sold for a gain. The Federal Government with its "expanding need" affecting the federal tax law[3] does not have to wait for its tax on profits from lot sales through the years until enough of the lots have been profitably sold to recover more than the purchase price of all the lots in the subdivided area.

■ Also, although the capital investment in a subdivision scheme yield a net loss to the taxpayer, as many do when the last lots are sold, nevertheless the Government receives its tax from the profitable sale, in any year, of the more desirable lots. That is to say, the taxpayer pays an income tax on his capital investment though instead of yielding him a net profit, it causes him an actual loss. It is true that all of the individual lots which have been sold at a loss may have had their losses deducted from gross incomes in the years of the loss sales, but the annual deductions for sales less than the base produce no lessened taxes in years of no other net income, while deductions of the gross loss in the years of the last lot sales may make a very large saving in the tax. Also the reverse may be true in either or both instances.

It is thus seen that the variant from year to year of the taxpayer's gross income and of the tax rates makes the annual taxation as a "separate transaction" of the individual lot sales, an essentially different scheme from one where the gain is determined by the excess of the gross sales receipts of all the lots over the cost price of the entire tract.

---

[1] Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.

[2] Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 116, 59 S.Ct. 423, 83 L.Ed. 536.

[3] Helvering v. Mountain Producers Corp., 303 U.S. 376, 384, 58 S.Ct. 623, 82 L.Ed. 907.

■ For tax years preceding 1931, the Commissioner, after a field investigation, had made what the Board describes as a gross error and established a base cost for the particular lots sold in those prior years that was larger than the fact. It is not claimed there was any fraud or concealment on the part of the taxpayer. By deducting this wrongful base price the true base of the cost of all the lots, both sold and unsold, had been exceeded before December 31, 1930. The taxpayer was then liable to suits by the Government for the amounts which its tax had been reduced by the Commissioner's error in over-allowance in the base. Although so liable on December 31, 1931, for these prior underpayments, the Commissioner contends that the true cost base for the lots sold in 1931 should not have been deducted and that the Board erred in allowing any deduction at all.

It is apparent that the taxpayer when it computed its net income as of December 31, 1931, would not in any way reduce its liability in suits by the Commissioner for these underpayments for the prior years if it had refrained from taking the deduction of the true base for the lots sold in 1931. In no sense would a failure to make the true deduction in some subsequent tax year, chosen by the taxpayer, be a logical payment of the existing indebtedness to the Government for the prior years' underpayments. As stated, the taxpayer in subsequent years may have no other taxable income from which the deduction may be made; or if there be other income from which it may be made, there would be the difference in tax rates for different tax years. Of course, if permitted to make such an offset—defense in a suit against it for the prior year's underpayments, the taxpayer would claim he had refrained from making the deduction in the year of his highest income and tax rate.

In a similar situation in computing the gain in the sale of oil and mining properties, where depletion deductions in prior years were too small and hence caused overpayments of income taxes for those years, the Supreme Court held that the taxpayer could not use the insufficient prior deductions in determining the profit from the sale of the properties in a subsequent tax year. The sale was a separate transaction for the tax year in which it was made and the actual total depletion must be deducted from the cost base in computing the gain on the land sale. The Supreme Court held the taxpayer had his remedy for his prior overpayments by reviews by the Board of Tax Appeals for the prior years' proposed assessments. United States v. Ludey, 274 U.S. 295, 304, 47 S.Ct. 608, 71 L.Ed. 1054.

"The decision in the Ludey Case has been adopted [by Congress] in the later statutes as affecting sales of capital assets." [4] Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 307, 51 S.Ct. 418, 420, 75 L. Ed. 1049. The Thompson Oil case distinguishes between the law controlling the taxation on *sales of land* and that for depletion deductions from annual income from *oil produced from the land*. For the latter there is no regulation similar to Treasury Regulations 74 under the 1928 Act, here made the law for taxing the sale of the land itself.

■ At the argument the Commissioner admitted that at the time of the computation of the 1931 income, the taxpayer was liable to the Government for the amount of the underpayments of taxes in the prior years and that a refraining from using any basic deduction for the lots sold in 1931 would not be an offset in suits based upon the prior years' underpayments. The Commissioner contends, however, that we must not look at the situation as it was at the time the taxpayer computed the tax for 1931. He claims we must look at it as it is now when, the Commission volunteers, though it does not appear in the record, that he has failed to collect the amount due for the prior years and has permitted the statute of limitation to run against him.

Assuming this claimed failure to be true, we are unable to accept such a contention. The running of the statute against the Government ended its claim for the prior years' underpayments of taxes. It is as effective against the Government's claim, that, because of its failure to sue, it can recoup the amount it thereby has lost by distorting the tax for the year 1931, as it was against the claim of the taxpayer in United States v. Ludey, supra, that he

---

4 Act of 1924, see 234, § 202, 43 Stat. 253, 255, 26 U.S.C.A. Int.Rev.Acts, page 4; Act of 1926, c. 27, § 202 (b) (2), 44 Stat. 9, 12, 26 U.S.C.A. Int.Rev.Acts, page 147; Act of 1928, c. 852, § 111 (b) (2), 45 Stat. 791, 815, 26 U.S.C.A. Int.Rev.Acts, page 376.

could distort the computation on a land sale in a certain year because in a prior year he had been overtaxed on the oil taken from the land. The taxpayer would have added nothing to his argument in the Ludey case by claiming he had neglected to sue for the refund of the prior overpayment and that the statute had run.

The Commissioner's contention also ignores the many decisions of the Supreme Court that Congress has caused income taxes to be computed on an annual basis and with the factors in the income of the particular tax year.[5] The regulation determining the annual income from lot sales as if each lot had been acquired on a separate cost base, follows the general tax law as stated in these decisions.

■ Nor can we see any merit in the attempt to state the case as if the taxpayer "has been allowed to recover the entire investment [in all the lots] through the return of capital deductions." The tax law as stated in the sanctioned regulation does not allow the taxpayer to treat the purchase of the land as an "entire investment." On the contrary, the taxpayer is required to treat each parcel sold as a separate capital transaction having a separate basic cost and yielding a separate profit in the year of its sale.

■ Nor is the contention of the Commissioner correct that an over allowance of base cost to certain lots sold in earlier years makes the proper base cost deduction on other lots sold in a subsequent year a "double deduction" such as is considered in United States v. Ludey, 274 U.S. 295, 301, 47 S.Ct. 608, 71 L.Ed. 1054; Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127; Baltimore & O. R. Co. v. Commissioner, 78 F.2d 456, 458, 459; Ramsey v. Commissioner, 10 Cir., 66 F.2d 316, certiorari denied 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581; Weil v. Commissioner, 6 Cir., 92 F.2d 1022; Comar Oil Co. v. Helvering, 8 Cir., 107 F.2d 709; Cincinnati Milling Mach. Co. v. United States, Ct. Cl., 14 F.Supp. 505. None of these cases holds that an improper deduction from the gross receipts from a specific piece of property sold in one year may be corrected by refusing a deduction upon the sale of a different piece of property in a different year.

The Board of Tax Appeals committed no error in allowing the deduction of the 1913 base cost of the lots sold in 1931.

■ B. The Commissioner also seeks to review the determination of the Board of Tax Appeals that the taxpayer should be allowed to deduct from the proceeds of the sales of the lots in 1931 the expenditures made for streets, drives, curves, and other improvements which have benefited the specific lots so sold. The parties have stipulated the amounts of such expenditures for improvements and the question is whether they should be added to the 1913 base cost of the lots.

The theory under which the deduction for these expenditures is claimed is that these improvements benefited the lots sold and their cost should be added to their base value. This is in accordance with the provisions of § 111(b) (1) of the Revenue Act of 1928, "Proper adjustment shall be made for any expenditure, receipt, loss, or other item, properly chargeable to capital account, * * *." Article 561 of Regulations 74 under the Revenue Act of 1928, which, as seen, has now become the law determining such adjustments, and provides that "In computing the amount of gain or loss, however, the cost or other basis of the property shall be properly adjusted for any expenditure, receipt, loss, or other item, properly chargeable to capital account, including the cost of improvements and betterments made to the property since the basic date" and that "the sale of each parcel shall be considered a separate transaction." This section thus permits the addition of an allocated portion of such expenditures to the cost basis of each of the lots sold in 1931 to be deducted from the receipts from its sale in that year.

The Commissioner contends that the same reasons advanced for disallowing the deduction for the unadjusted cost base of March 1, 1913, exist for disallowing the claimed addition to the 1913 cost base of the allocated amounts of the improvements. Since we have held that the reasons advanced for disallowing the 1913 cost base

---

[5] Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383; Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 306, 51 S.Ct. 418, 75 L.Ed. 1049; Woolford Realty Co. v. Rose, 286, U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128; Brown v. Helvering, 291 U. S. 193, 198, 199, 54 S.Ct. 356, 78 L.Ed. 725; Helvering v. Morgan's Inc., 293 U. S. 121, 126, 127, 55 S.Ct. 60, 79 L.Ed. 232; Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 497, 498, 58 S.Ct. 673, 82 L.Ed. 975.

of the individual lots are not compelling but are inconsistent with the specific provisions of the regulations and the established practice and policy of the law respecting the sales of individual lots subdivided in a larger tract and the annual reporting of income therefrom, it follows that the Board did not err in allowing the addition to the cost base of the agreed amount of the improvement to each lot.

■ C. The taxpayer petitions this court to review the Board's decision that an addition to the March 1, 1913 cost base of the lots sold in 1931 cannot be allowed for the value of adjacent lands transferred by the taxpayer in consideration for their use as rights-of-way and for flood control benefiting the specific lots sold. They are called "donated lands" but, in effect, they were sold on a consideration of the "betterment" to the lots disposed of in 1931 and other years. The amount of the allocated cost for these betterments is agreed and the question is whether the law permits its addition to the 1913 cost of these lots.

Taxpayer and the Commissioner agree that the same reasoning applies to the claimed addition to the 1913 cost basis for the value of the so-called donated lands as was used with respect to all deductions for return of capital for the 1931 sale. The Board, however, drew a distinction between the claimed addition to the 1913 cost basis of the lots sold in 1931 for improvements and that for the "betterments" arising from the so-called donated lands. The Board ruled that since in its opinion there was never a sale of the so-called donated lands it was proper to regard the allowance in the years prior to 1931 of the erroneously high 1913 cost basis, exceeding as it did the value of the so-called donated properties computed on the corrected cost basis, as returning the capital investment in such so-called donated lands.

We are unable to see any distinction between a cost by payment in land to secure rights-of-way to and flood protection for the lots sold in 1931 and a cost by the payment in money for improvements on the lots. The Board erred in refusing to allow the agreed value of the so-called donated lands allocated to the cost basis of the lots sold in 1931.

The proceeding is remanded to the Board of Tax Appeals for a redetermination of the taxpayer's income tax for 1931 in accord with this opinion.

Affirmed in part and reversed in part and remanded.