## RUST–OWEN LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5263.

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1934.

John M. Campbell, of Eau Claire, Wis., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., and Arnold Raum, of Washington, D. C., for respondent.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

This appeal involves income taxes for the years 1927, 1928, and 1929, and arises out of a controversy over the amount petitioner should be allowed to deduct for depletion resulting from the cutting of timber owned by it in March 1913.

Petitioner prior to 1908 acquired certain land in Wisconsin with standing pine, hardwood, and hemlock timber. From April 30, 1913, to and including November 7, 1930, it held and operated those timber holdings as a single operating unit. In 1908 and 1909 it had its timber cruised and entered the estimates of the amounts upon its books. From 1909 to 1912 it purchased additional timber, and made considerable cuts from that which it owned.

In February, 1921, petitioner, in furnishing to the Commissioner information necessary for the determination of deductions to be allowed from its income on account of depletions in its timber, reported the amounts owned by it as based upon the 1908 cruise with adjustments for the overrun and underrun as disclosed by subsequent cuttings, and for the additional purchases. The value of the standing timber per thousand feet on March 1, 1913 was stated to be $14 for pine and $4 for hemlock and hardwood. These quantities and values were accepted by the Commissioner as the basis for computing deductions allowable for depletion on March 1, 1913. The total value of all then standing timber was found to be $4,882,176, of which $4,581,696 was allocated to pine, and $300,480 to hemlock and hardwood at the prices per thousand feet as stated.

The standing timber on March 1, 1913 as adjusted to December 31, 1926 for purchases and sales in the meantime, was valued at $4,900,744.08. Taking into account the cut during the period from March 1, 1913 to December 31, 1926, the standing timber remaining at the latter date was valued at $288,008.53. From April 30, 1913 deductions for depletion were allowed on the timber cut at the rate of $13.908 per thousand feet for pine, and $4.014 for hemlock and hardwood.

In 1929 the Commissioner in examining petitioner's return for 1927 ascertained that the amount of timber standing on December 31, 1926 was greater than the amount carried in its accounts as derived from the adjustments to the estimated reserve of March 1, 1913. The Commissioner, on the information at hand, found an overrun of 12,329,975 feet of pine, and 19,615,568 of hemlock and hardwood, and thereupon fixed the correct amount of standing timber on December 31, 1926 at 27,176,550 feet of pine, and 39,926,880 feet of hemlock and hardwood. He, therefore, adjusted the unit of value of the standing timber on December 31, 1926 to allow for the cor-

rected quantities on the basis of the unexhausted value for March 1, 1913, as previously fixed in 1921 for the tract as a whole, that is to say, he determined the depletion rate for the years following 1926 to be $7.5976 per thousand feet for pine, and $2.042 for hemlock and hardwood.

In 1928 and 1929 petitioner made further cuts in its timber, and for each of those years it claimed a deduction for depletion at the rates allowed for the years prior to 1927. The Commissioner, however, determined that depletion for 1928 was allowable at the adjusted rates resulting from the correction of quantities as of December 31, 1926.

The actual cut of timber as of November 7, 1930 disclosed further excess quantities over the original estimate. The Commissioner, in order to allow for the overrun, again corrected the timber reserve, and determined the amount of standing timber as of December 31, 1928, and he again readjusted the unit values for fixing the depletion rates allowable for 1929, at $6 per thousand feet for pine, and $1.1375 for hemlock and hardwood. These adjustments were likewise based upon the 1921 estimated unexhausted value of the tract as a whole as of March 1, 1913.

Petitioner claimed deductions for depletion in 1927, 1928, and 1929 at the rates of $13.908 per thousand feet of pine, and $4.014 for the hemlock and hardwood fixed upon the value of the entire tract and the estimated reserve as of March 1, 1913, as originally adjusted in 1921, and allowed for each year prior to 1927. The deductions claimed and the amounts allowed and disallowed by the Commissioner are as follows:

| Date | Claimed | Allowed | Disallowed |
|------|---------|---------|------------|
| 1927 | $221,928.15 | $119,408.90 | $102,519.25 |
| 1928 | 139,532.04 | 74,033.00 | 65,499.04 |
| 1929 | 170,462.56 | 66,029.21 | 104,433.35 |
| | $531,922.75 | $259,471.11 | $272,451.64 |

The Commissioner determined a deficiency for each year as hereinbefore stated. The Board of Tax Appeals sustained the Commissioner, and from that ruling of the Board this appeal is prosecuted.

■ The question presented as stated by appellee is whether in computing the deductions allowable for depletion of the timber acquired prior to March 1, 1913, where the actual reserve on that date later proved to be greater than previously estimated, the timber should be revalued as of that date with no change in the unit rate of depletion, or the previously determined value should stand and the unit rate of depletion be adjusted to allow for the excess timber.

Section 234 (a) (8) of the Revenue Act of 1926, 26 USCA § 986 (a) (8), provides that in computing the net income of a corporation subject to the tax imposed by section 230 of the act (26 USCA § 981 note), there shall be allowed as deductions, in case of timber, a reasonable allowance for depletion according to the peculiar conditions of each case, and that such reasonable allowance shall be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. Sections 204 (b) and (c) of the act, 26 USCA § 935 (b, c), provide that the basis for determining the gain or loss from the disposition of property acquired before March 1, 1913, shall be the cost of such property, or its fair market value, on March 1, 1913, whichever is greater, and the same basis shall be used in determining the depletion of such property. These provisions, without material change were reenacted in the Revenue Act of 1928, § 23 (1) (m); § 114 (b) (1); § 113 (b) (1) and (2), 26 USCA §§ 2023 (l, m), 2113 (b) (1, 2), 2114 (b) (1). Pursuant to the statutory authorization, the Commissioner promulgated Articles 229, 230, 234 and 235 of Treasury Regulations 69.[1]

---

[1] Treasury Regulations 69.

"Art. 229. *Computation of allowance for depletion of timber for given year.*— The allowance for depletion of timber in any taxable year shall be based upon the number of units of timber felled during the year and the unit value of the timber in the timber account or accounts pertaining to the timber cut. The unit value of the timber for a given timber account in a given year shall be the quotient obtained by dividing (*a*) the cost or the fair market value as of the basic date of the timber on hand at the beginning of the year plus the cost of the number of units acquired during the year plus proper additions to capital (see article 231), by (*b*) the total number of units of timber on hand in the given account at the beginning of the year plus the number of units acquired during the year plus (or minus) the number of units required to be added (or deducted) by way of correcting the estimate of the number of units remaining available in the ac-

The specific controversy arises over the fact that while the Commissioner accepted petitioner's corrections as to the amount of timber in the tract on March 1, 1913, as disclosed by the subsequent and final cuttings, he refused to be bound, for the years in controversy, by the unit value of the timber on March 1, 1913, which had been agreed to by the parties in 1921, that is to say, $14 per thousand feet for the pine and $4 for the hemlock and hardwood.

The statute, of course, provides that the actual value or cost, whichever is the greater, shall be used. It is clear that in this case the count. The amount of the deduction for depletion in any taxable year with respect to a given timber account shall be the product of the number of units of timber cut from the given account during the year multiplied by the unit value of the timber for the given account for the year. * * *

"Art. 230. *Revaluation of timber not allowed.*—In the case of timber acquired prior to March 1, 1913, the fair market value as of that date or the cost, whichever is greater, shall, when determined and approved by the Commissioner, be the basis for determining the depletion deduction for each year during the continuance of the ownership under which the *fair market value* of the timber was fixed, and during such ownership there shall be no redetermination of the fair market value of the timber for such purpose, except in the case of misrepresentation, fraud, or gross error as to any facts determinable on the date of valuation. Revaluation on account of misrepresentation, fraud, or gross error will be made only with the written approval of the Commissioner. However, the unit market (or cost) value of the timber will subsequently be changed if from any cause such unit market (or cost) value, if continued as a basis of depletion, shall upon evidence satisfactory to the Commissioner be found inadequate or excessive for the extinguishment of the cost or fair market value as of March 1, 1913, of the timber."

"Art. 234. *Determination of fair market value of timber.*—Where the fair market value of the property at a specified date is the basis for depletion and depreciation deductions, such value shall be determined, subject to approval or revision by the Commissioner upon audit, by the owner of the property in the light of the most reliable and accurate information available with reference to the condition of the property as it existed at that date, regardless of all subsequent changes, such as changes in surrounding circumstances, in methods of exploitation, in degree of utilization, etc. The value sought will be the selling price, assuming a transfer between a willing seller and a willing buyer as of the particular date. Such factors as the following will be given due consideration:

"(*a*) Character and quality of the timber as determined by species, age, size, condition, etc.;

"(*b*) The quantity of timber per acre, the total quantity under consideration, and the location of the timber in question with reference to other timber;

"(*c*) Accessibility of the timber (location with reference to distance from a common carrier, the topography and other features of the ground upon which the timber stands and over which it must be transported in process of exploitation, the probable cost of exploitation, and the climate and the state of industrial development of the locality); and

"(*d*) The freight rates by common carrier to important markets. * * *

"Art. 235. *Determination of quantity of timber.*—Each taxpayer claiming or expecting to claim a deduction for depletion is required to estimate with respect to each separate timber account the total units (feet board-measure, log scale, cords, or other units) of timber reasonably known, or on good evidence believed, to have existed on the ground on March 1, 1913, or on the date of acquisition of the property, as the case may be. This estimate shall state as nearly as possible the number of units which would have been found present by a careful estimate made on the specified date with the object of determining 100 per cent of the quantity of timber which the area would have produced on that date if all of the merchantable timber had been cut and utilized in accordance with the standards of utilization prevailing in that region at that time. If subsequently during the ownership of the taxpayer making the return, as the net result of the growth of the timber, of changes in standards of utilization, of losses not otherwise accounted for, of abandonment of timber, and/or of errors in the original estimates, there are found to remain on the ground, available for utilization, more or less units of timber than remain in the timber account or accounts, a new estimate of the recoverable units of timber (but not of the cost or the fair market value at a specified date) may be made, with the approval of the Commissioner, and, when made, shall thereafter constitute a basis for depletion."

actual value was used instead of cost. It is contended, however, by the Commissioner that petitioner valued the entire tract in lump sums with respect to the pine and other timber, and for that reason those valuations must remain constant, regardless of increased timber footage. He says that he ascertained the unit rates of $14 for the pine and $4 for the other timber by dividing petitioner's total valuations by the respective totals of the timber feet as reported by petitioner in 1921. He therefore argues that when the totals of timber feet were increased by subsequent cuttings, those totals when divided into the valuations of 1921, will reduce the unit values of the pine for 1927 and 1928 from $14 to $7.5976, and of the other timber from $4 to $2.042, and for the year 1929 to $6 for the pine and $1.1375 for the other timber. This argument would be sound if the cost price to petitioner were used as a basis, but the record discloses nothing to indicate what the cost price was or that it was ever considered. It is true that petitioner in 1921 submitted total valuations of the two classes of timber, but his report shows more than that; it discloses that he arrived at those valuations by multiplying the pine footage by $15 per thousand feet, and the other timber by $4 per thousand feet. This showed a total of both classes of timber of 402,384,795 feet at a valuation of $5,209,448.38. The Commissioner, however, did not adopt that valuation. He accepted the footage but he changed the price of pine per thousand feet from $15 to $14, which changed the total valuation to $4,886,176, a difference of $327,272.38. It is obvious, therefore, that the Commissioner in 1921 did not ascertain the unit value by dividing the footage into the total valuation which petitioner had submitted. Clearly, the unit values as adopted by the Commissioner in 1927, 1928, and 1929 do not reflect the actual value of the timber in 1913, as contemplated by the statutes. It is to be noted that the Commissioner accepted the revised quantities in every instance, and he does not deny that the actual value per thousand feet on March 1, 1913, as between a willing seller and a willing buyer was $14 for the pine and $4 for the other timber. He declines, however, to reflect those unit values in the total valuations, but seeks to confine petitioner to the total valuations estimated in 1921 as of March 1, 1913. He says the original valuation made in 1921 was of the timber reservation as a whole and represented the entire capital investment in all the timber standing on March 1, 1913, and that that capital is to remain constant notwithstanding the fact that petitioner later discovered that it had more timber than it first supposed. In this it seems there is an attempt to shift the calculations from a true value basis to either a cost basis or some other basis not disclosed by the evidence. The statute requires the true value basis to be used because it is greater than the one which the Commissioner seeks to apply, and it further states that that value as of March 1, 1913, shall be considered as the capital investment. The Commissioner contends that when subsequent operations disclosed an increase in quantity of timber it was his duty to correct the quantity of reserve to reflect the increase, in order to correctly determine the percentage of annual depletion so that the recovery of the entire capital might coincide with the conclusion of the cutting. This is quite true, but he further insists that it was also his duty, at the same time, to revise the unit value, or the value per thousand feet of the timber. In this we think the Commissioner is in error. His conclusion in this respect could be true only in case the amount of capital investment were based on cost, rather than actual value. We hold that petitioner's capital investment must be the entire actual footage of the pine at the rate of $14 per thousand feet, plus the entire actual footage of the other timber at the rate of $4 per thousand feet. It is true that article 230 of the Treasury Regulations provides that the unit market value of timber will subsequently be changed if from any cause such unit market value if continued as a basis of depletion shall, upon evidence satisfactory to the Commissioner, be found inadequate or excessive for the extinguishment of the fair market value as of March 1, 1913. With that regulation, reasonably used for the purposes of carrying out the provisions of the statute, we have no complaint, but it can not be used to limit the rights plainly granted by the statute (Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267), even though the statute be re-enacted after the promulgation of the regulation. It is obvious that the unit values as adopted by the Commissioner for the years 1927, 1928, and 1929 can never permit petitioner to recover his capital investment as we find it to be on March 1, 1913, and to adopt those unit values would be to deny petitioner the rights which the statute plainly gives it. It seems clear to us that when actual cost is used to determine capital investment, the amount if correctly determined will remain constant, and the unit value may vary with the number of units; but it is equally clear that where, as here, actual

value on March 1, 1913 is used to determine capital investment, the unit of value must remain the same and the capital investment may vary with the variation of the number of units.

It is contended by the Commissioner, however, that even though the estimate of the quantity of timber on March 1, 1913 was less than the actual amount, the remaining reserve can not be corrected and the unexhausted value apportioned to the corrected quantity, thus obtaining revised depletion rates, because under the treasury regulations, the timber reserve may not be revalued during the same ownership except for fraud, misrepresentation, or gross error. In this case the ownership remained the same and it is admitted that there was neither fraud nor misrepresentation; but that there was gross error in estimating the timber reserve as of 1913, is alleged by petitioner and denied by the Commissioner.

The final cut of the timber disclosed that there was gross error in prior estimates of the timber reserve. The overrun amounted to more than 45,000,000 feet, which at its actual value would increase the capital investment by more than $300,000, and if reflected in the depletion account would increase petitioner's total depletion deductions for 1927, 1928, and 1929, over those allowed by the Commissioner, by almost $260,000. The tax involved is more than $36,000. These figures seem to us to be more than trivial in their import and convince us that there was gross error in the prior estimates within the meaning of the Statute and the treasury regulations.

Our attention has been directed to Boyne City Lumber Co. v. Doyle (D. C.) 47 F.(2d) 772 (reversing 7 B. T. A. 36) wherein an overrun of fourteen per cent was not regarded as gross error. The Commissioner, however, admits that that ruling applies only to the particular facts of that case, and that a limit of fourteen per cent can not be safely applied to all cases. It is sufficient to say that the amounts involved in that case are not comparable to the facts before us and the case is not applicable here. It is also worthy of note that in Cape Henry Syndicate v. Commissioner, 30 B. T. A. 794, the Board does not agree with the rule laid down by the District Court in the Boyne City Case.

The order of the Board of Tax Appeals is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.