**LUCKY TIGER–COMBINATION GOLD MINING CO. v. CROOKS, Collector of Internal Revenue.**

No. 11021.

Circuit Court of Appeals, Eighth Circuit.
April 12, 1938.

886

Ralph M. Jones, of Kansas City, Mo. (William C. Michaels and Michaels, Blackmar, Newkirk, Eager & Swanson, all of Kansas City, Mo., on the brief), for appellant.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action at law for the recovery of an alleged overpayment of income taxes for the year 1925. The controversy involves the amount of depletion which the taxpayer may deduct from gross income in arriving at the net income of a silver mine. The case was tried in the District Court without a jury, judgment was for the government, and the taxpayer appeals.

Appellant owns all of the capital stock of the Tigre Mining Company, Sociedad Anonima, a Mexican corporation, which owns mining property in Mexico where it has been engaged in producing silver since prior to March 1, 1913. During the year 1921 the Bureau of Internal Revenue established and allowed an appraised value on the ore assets as of March 1, 1913, in the amount of $5,884,539 based upon an estimate that 29,478,487 ounces of silver were contained in the mine. Dividing the valuation by the number of ounces of silver resulted in a depletion rate of $.19962147 per ounce. Under the Revenue Act of 1926, which took effect as of January 1, 1925, the taxpayer is allowed a deduction at this rate for each ounce of silver produced and sold during the tax year.

By the end of 1925 the total amount of silver extracted from the mine since March 1, 1913, was 30,535,243 ounces, or 1,056,756 ounces more than the estimated contents of the mine, and there were large reserves of ore still remaining. During the year 1925 the Mexican Company recovered from the mine 2,455,156 ounces of silver. Translating these figures into values by applying the depletion rate of $.19962147 an ounce, the result is that for 1925 the depletion sustained was $490,101.85, while there remained at the beginning of the year on the basis of sustained depletion a reserve of only $279,150.77, or a difference of $210,951.08. But on the basis of allowed depletion the reserve at the start of 1925 amounted to $1,121,905.99. This difference between allowed and sustained depletion is the basis of the dispute in this case, and is due to the fact that under the Revenue Act of 1913 the depletion allowed for the years 1913, 1914, and 1915 was only 5 per cent. of the gross value of the output at the mine. The difference between depletion actually sustained and allowed for those years is $944,305.54.

During the taxable year 1925 the Mexican corporation distributed to the appellant $900,000. It had an operating income for that year of $846,529.98, and the Commissioner determined that $496,963.04 of such income was taxable to appellant as current earnings. In the event its operating income of $846,529.98 for the year 1925 should be reduced by the depletion deduction of $490,-101.85, as claimed by appellant, the Mexican corporation would have current earnings available for distribution of $311,090.77, and $588,909.23 of the distribution of $900,000 would be from appreciation in value of property accrued prior to March 1, 1913.

On its income tax return for 1925, the appellant included as dividends on the stock of the Mexican corporation $496,963.04 as taxable income and paid $22,100.48 in taxes. Had the appellant returned as income subject to tax the sum of $311,090.77, instead of $496,963.04, the tax would have been $11,001.48 less. This is the sum which it is sought to recover in this suit.

The appellant predicates its alleged right to recover upon two theories: (1) That it is entitled under the Revenue Act of 1926 to deduct for the year 1925 the depletion sustained but not allowed for the years 1913, 1914, and 1915; and (2) that since the original estimate was materially erroneous it is entitled to a revision of the estimated contents of the mine and of its corresponding depletable value as of March 1, 1913, in order that distributions of its capital assets may not be rendered taxable as income.

The government contends: (1) That appellant is not entitled to recover upon its first theory because this court has adversely determined that ground of its contention; and (2) that it cannot recover upon its second theory because its claim for refund was not broad enough to support that theory.

The District Court sustained the government's contentions.

█ Appellant's first theory was considered by this court and rejected in Lucky Tiger-Combination Gold Mining Co. v. Commissioner of Internal Revenue, 8 Cir., 76 F.2d 234, cert.den. 296 U.S. 584, 56 S.Ct. 95, 80 L.Ed. 413, which involved appellant's 1927 income taxes. It was there held, upon the authority of Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 51 S.Ct. 418, 75 L.Ed. 1049, that in determining whether any depletable capital remained for which allowance might be made in 1927, there should be subtracted from the March 1, 1913, value of the property the aggregate of the depletion actually sustained in the intervening years. The reason for this rule, as the opinion in the Thompson Case supra pointed out, is that the income tax is a tax for specific years, and Congress did not intend that the taxpayer should be allowed a deduction in one year for depletion sustained in another year.

Appellant urges that the previous decision of this court in Lucky Tiger-Combination Gold Mining Co. v. Commissioner of Internal Revenue, supra, should be reconsidered in the light of section 201 of the Revenue Act of 1926, 44 Stat. 10, which defines the term "dividend" and provides for the tax-free distribution of any increase in the value of property which accumulated before March 1, 1913. It is the taxpayer's contention that, until aggregate deductions for depletion actually allowed equal the estimated value of the mine as of March 1, 1913, the output of the mine is in part a tax-free distribution of capital.

█ This is simply another way of stating the claim that depletion not allowed in one year may be deducted in another. Appellant's contention is that, because for the years 1913 to 1915 the government collected a tax upon what should be regarded as a tax-free distribution of capital under the statute which was in force in 1925, therefore the taxpayer should be allowed an equivalent deduction in 1925. That Congress has the power to tax mine owners without allowing deduction for actual depletion was settled early in the history of income tax litigation. Stanton v. Baltic Mining Co., 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546. And that the inadequacy of the allowance in the early years does not sanction a tax-free distribution in a subsequent year is also settled by the holding of the Supreme Court in Burnet v. Thompson Oil & Gas Co., supra. The allowance of depletion as a deduction is for any year an act of grace. Helvering v. Mountain Producers Corporation, 58 S.Ct. 623, 82 L.Ed. ——, decided March 7, 1938. We are satisfied with our former decision. ,

Appellant's other contention, that the original appraisal, being erroneous, is now subject to correction, requires an examination of the pertinent statutes and regulations.

The Revenue Act of 1926 provides:

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: ＊ ＊ ＊

"(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary." 44 Stat. 41, 42.

Treasury Regulations 69, promulgated under this act, provides:

"Art. 209. Determination of mineral contents of mine.—Every taxpayer claiming a deduction for depletion of mines for a given year will be required to estimate or determine with respect to each separate property the total units (tons, pounds, ounces, or other measure) of mineral products reasonably known, or on good evidence believed, to have existed in the

888

ground on the basic date, according to the method current in the industry and in the light of the most accurate and reliable information obtainable. Preference shall be given in the selection of a unit of estimate to the principal unit, (or units) paid for in the product marketed. The estimate of the recoverable units of the mineral products in the property for the purposes of valuation and depletion shall include as to both quantity and grade—

"(a) The ores and minerals 'in sight,' 'blocked out,' 'developed,' or 'assured,' in the usual or conventional meaning of these terms in respect to the type of the deposit, and

"(b) 'Probable' or 'prospective' ores and minerals (in the corresponding sense), that is, ores and minerals that are believed to exist on the basis of good evidence although not actually known to occur on the basis of existing development. * * *

"If information subsequently obtained clearly shows the estimate to have been materially erroneous, it may be revised with the approval of the Commissioner."

It is not claimed that the regulations are inconsistent with the statute or repugnant to the Constitution. Such a claim could not well be made in view of the fact that the same regulation was in force under the Revenue Act of 1924. Old Mission Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Murphy Oil Co. v. Burnet, 287 U.S. 299, 307, 53 S.Ct. 161, 77 L.Ed. 318; Hazeltine Corporation v. Commissioner, 3 Cir., 89 F.2d 513, 521; Updike v. Commissioner, 8 Cir., 88 F.2d 807, 812.

The output of the mine in 1925 and in subsequent years makes it apparent that the 1921 estimate of the amount of silver in the mine as of March 1, 1913, was "materially erroneous." Under the regulation it was proper to secure a revision of the original estimate "with the approval of the Commissioner." The question for consideration is whether the taxpayer has, in order to secure a revision of the estimate as of March 1, 1913, for the purpose of correcting the 1925 tax, pursued the course provided by law and the foregoing regulation.

■ Section 1113(a) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 116, title 26 U.S.C. §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673, provides that "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously assessed or collected * * * until a claim for re-fund or credit has been duly filed with the Commissioner [of Internal Revenue] * *." The filing of the claim is clearly a prerequisite to the action in court for the recovery of the tax. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Red Wing Malting Co. v. Willcuts, 8 Cir., 15 F. 2d 626, 49 A.L.R. 459, certiorari denied 273 U.S. 763, 47 S.Ct. 476, 71 L.Ed. 879.

On September 11, 1929, appellant filed with the collector of internal revenue its claim for a refund of the tax for which this action was brought. The ground of recovery set out in the claim is: "* * * that a taxpayer is permitted under the Revenue Act of 1926 to continue to take depletion deductions until the March 1, 1913, value of its property has been returned or exhausted through such deductions. This being so the distributions to taxpayer in 1925 were from the March 1, 1913 value and therefore from capital to the extent indicated below." Then follows a calculation in which it is shown that the valuation of March 1, 1913, was not exhausted by allowed depletion before the end of the year 1925. The calculation is based upon the allowed depletion for the years prior to 1925 and ignores the fact that if the sustained depletion for the years 1913 to 1915 inclusive is considered the depletion value of March 1, 1913, was exhausted before the end of the year 1925.

The claim does not intimate that the estimate for March 1, 1913, had through "information subsequently obtained" been found to be "materially erroneous." Approval of a new estimate by the Commissioner is not requested. Nowhere does the claim contain a new estimate nor any data whatever necessary for a revision of the original estimate.

An examination of the claim is convincing that appellant's second contention as a theory of recovery is not sustained by the record.

■ First, it is well settled that where a claim for refund is made upon a specific ground the taxpayer, after the statute of limitations has run, or in an action in court to recover the tax, cannot shift "to a totally different ground for such refund." United States v. Garbutt Oil Company, 58 S.Ct. 320, 322, 82 L.Ed. ——, decided January 3, 1938. "The United States has consented to be sued by a taxpayer for the recovery of a tax alleged to have been illegally exacted

and paid only in cases where the grounds asserted in the suit have been presented to and passed upon by the Commissioner of Internal Revenue." Taber v. United States, 8 Cir., 59 F.2d 568, 571; United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. The second ground of recovery not having been called to the attention of the Commissioner appellant cannot rely upon it in an action in court.

▮▮ Second, the taxpayer, before he can maintain a suit in court to recover a tax erroneously paid, must first pursue the administrative remedy to a conclusion. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 342, 57 S.Ct. 816, 818, 81 L.Ed. 1143. Generally, when a matter is subject to the determination of an administrative officer courts refuse to interfere until the administrative remedy has been invoked and exhausted. First National Bank of Greeley v. Weld County Com'rs, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784; McGregor v. Hogan, 263 U.S. 234, 44 S.Ct. 50, 68 L.Ed. 282; Gorham Mfg. Co. v. Tax Commission, 266 U.S. 265, 269, 45 S.Ct. 80, 69 L.Ed. 279; City of Springfield v. Hotel Charles Company, 1 Cir., 84 F.2d 589. In the instant case the appellant made no attempt in its claim, nor otherwise in so far as appears, to take advantage of the provisions of article 209 of Regulations 69 under the Revenue Act of 1926 to secure a revision of the depletable reserves. It is not in a position, therefore, to demand that the court revise the original estimate.

Appellant claims, however, "that no actual revaluation to a specific figure is necessary" to entitle it to recover, but that it is required merely to show that the original estimated valuation is insufficient to allow a return of its actual capital whereupon the original rate of depletion must be allowed until the mine is exhausted. For this proposition appellant relies upon Rust-Owen Lumber Co. v. Commissioner, 7 Cir., 74 F.2d 18.

In our opinion the cited case is not controlling. That case involved taxes for the years 1927, 1928, and 1929 arising out of depletion resulting from cutting timber owned by the taxpayer on March 1, 1913. The Treasury Regulations applicable to depletion for timber differ materially from those relating to mines. In the case of mines article 208 of Regulations 69 provides that "No revaluation of property whose value as of the basic date (March 1, 1913) has been determined and approved will be made or allowed during the continuance of the ownership under which the value was so determined and approved, except" in circumstances not here material. But "The value as of the basic date should, however, be corrected when a virtual change of ownership of part of the property results as the outcome of litigation, and should be redistributed—(a) When a revision of the number of units of mineral in the property has been made in accordance with articles 209 * * *" set out supra.

▮▮ Accordingly in this case the valuation as of March 1, 1913, of $5,884,539.00 cannot be corrected until the "number of units of mineral in the property" has been revised and the rules for effecting such correction provided for in article 209 have been complied with. Such revision neither having been made nor attempted to be made there is no depletable fund available after the original valuation is exhausted. Neither the Commissioner nor the court can grant a recovery of the tax where the taxpayer has neglected to pursue the remedy provided. Even if the bringing of this action were deemed to be the equivalent of a request to the Commissioner to revise the valuation of March 1, 1913, it would not aid the appellant in the computation of his 1925 taxable net income, because this court has held that where revision is made on account of "information subsequently obtained" the taxpayer cannot go back to previous years and upset the basis for depletion as it then stood. McCahill v. Helvering, 8 Cir., 75 F.2d 725. See, also, Kehota Mining Co. v. Lewellyn, D.C.Pa., 28 F.2d 995.

Upon no theory suggested is the appellant entitled to a reversal. The judgment appealed from is, therefore, affirmed.