Olin S. GODWIN, District Director of Internal Revenue, William D. Self, and United States of America, Intervenor, Appellants,

v.

William J. BROWN, d/b/a Tia Wanna Club, Appellee.

No. 15790.

United States Court of Appeals Eighth Circuit.

Nov. 13, 1957.

Rehearing Denied Dec. 11, 1957.

George F. Lynch, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., and Osro Cobb, U. S. Atty., and James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., on the brief) for appellants.

D. D. Panich and William H. Bowen, Little Rock, Ark., for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought to recover refunds of so-called cabaret taxes for the period April 1, 1950 through December 31, 1953. During that time the taxpayer operated a public restaurant which afforded its patrons music by juke box and dancing privileges, located in Little Rock, Arkansas, known as the Tia Wanna Club. The dancing was permitted only from 8:00 P.M. until closing.

The plaintiff filed timely cabaret tax returns for the periods and made payments thereon in respect to the amounts received for food, refreshments and services in the Club pursuant to Section 1700 (e) of the Internal Revenue Code, as amended by Section 404(a) of the Revenue Act of 1951, 26 U.S.C. 1952 edition, Section 1700(e). Thereafter he agreed that additional cabaret taxes should be and they were assessed against him for the same operations over the same period and he paid them.

Following that payment he filed claim for refund on form 843 on the ground that throughout the entire period he had made his computations of the excise tax of 20 per cent on gross taxable receipts which included the 20 per cent Federal Excise and the 2 per cent State Gross Receipts taxes or 122 per cent of gross receipts and that he was assessed on that basis. He stated on the form, "This error in computation has resulted in an

overpayment of Federal Excise tax of approximately 24.4 per cent more tax than should have been remitted." He attached schedules of "correct computations of tax" and asked for refunds of the over payments.

His claims for refund were disallowed and he brought this action for refund of the amounts of alleged over payments against the District Collector. He included in the complaint allegations to the effect that subsequent to his payment of the additional assessment a second additional assessment of cabaret taxes in respect to his operation of the Club for the period from January, 1951 through December, 1953, aggregating $13,058.05 had been illegally made against him which he did not claim to have paid but which he prayed to have ordered abated.

The allegations of the complaint were traversed by the District Attorney for the Eastern District of Arkansas for defendant, and dismissal of the action was prayed.

Thereafter the United States filed petition in intervention in the action with leave of court and prayed upon appropriate allegations that judgment be awarded to it for the amounts of the second additional assessment of cabaret taxes made against plaintiff for the period from January, 1951 through December, 1953, referred to in plaintiff's complaint.

The allegations of the petition in intervention were traversed by plaintiff.

On the jury trial of the case the court came to the conclusion during the taking of the testimony of the plaintiff, who was the first witness, that although the Tia Wanna Club as it had been operated through the whole period from April 1, 1950, through December 31, 1953, had been subject to the federal cabaret tax up to November 1, 1951, it had ceased to be subject to said tax on that date by reason of the amendment inserted by Section 404 of the Revenue Act of 1951, c. 521, 65 Stat. 452, 521, after the second

sentence of Section 1700(e). The court appears to have reached its conclusion from consideration of the plaintiff's description of the business of the Club, the opinion of Judge Graven in the case of Geer v. Birmingham, D.C.1950, 88 F. Supp. 189, the opinion of this Court in Peony Park v. O'Malley, 223 F.2d 668 and its construction of the amendment.

No one disputed the description of the business carried on at the Tia Wanna Club as given by the plaintiff and that description brought it squarely within the provisions of Section 1700(e) both before and after the amendment referred to. Before the amendment the Section read in relevant part:

"There shall be levied, assessed, collected, and paid—

\* \* \* \* \* \*

"(e) Tax on cabarets, roof gardens, etc.—(1) Rate.—A tax equivalent to 20 per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any room in any \* \* \* restaurant \* \* \* or other public place where music and dancing privileges \* \* \* are afforded the patrons in connection with the serving \* \* \* of food \* \*."

The amendment required the following to be inserted after the above:

"In no case shall such term include any ballroom, dance hall, or other similar place where the serving of food \* \* \* is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret or other similar place.' "[1]

1. The purpose of the amendment was explained in S.Rep. No. 781, Part 2, 82nd Congress, 1st Sess., pp. 69–70 (1951–2 Cum.Bull. 545, 593):

"This section, which is identical with section 404 of the House bill, amends section 1700(e) (1) of the code to exempt from the cabaret tax bona fide dance

■ The proof in this case including the testimony of the plaintiff established that the Tia Wanna Club was a cabaret or similar place furnishing a public performance in that it was a restaurant and public place where music and dancing privileges were afforded the patrons after 8 P.M. in connection with the serving of food and such selling and serving of food was not incidental to, but a main function of the business. The plaintiff testified:

"We are in the food business. We have a family clientele, businessmen and people that just want to go out and eat good food. * * * The primary thing that we attempt to do for patrons is to seat and satisfy them and give them good food.

\* \* \* \* \* \*

"My particular duties with the Club are to buy supplies, cut the meat, see to it that all orders go out properly, and see to it that people get good service."

\* \* \* \* \* \*

"We have a clientele which orders meals in advance. Quite a few people do that. We prepare food for people who telephone their orders and take the food away from the club."

His wife testified:

"We serve steak, chicken, sea-food, but no sandwiches; nothing but meals. A steak meal ran from $3.00 up; chicken, from $1.75 up."

halls, ballrooms, and other similar places where the serving or selling of food, refreshments, or merchandise is merely incidental to the music and dancing privileges furnished unless the conduct of the place is such as to bring it within the normal concept of a roof garden, cabaret, or similar place. This determination will be made by reference to the over-all operation of the establishment, including such factors as the relative income from the several activities over a period of time, the relative portion of space devoted to the various activities, the type of refreshments served or sold, the scope and character of the entertainment furnished, and the hours of operation.

Judge Graven's justly praised opinion in the Geer case, supra, in no wise tends to dim the applicability of the cabaret tax to the Tia Wanna Club. The business involved in the Geer case was the operation of a public dance hall charging admission and the question considered was whether it was taxable in respect to its incidental sales of refreshments, rental of booths and check rooms under the cabaret statute or under Section 1700 (a) as a place where admission was charged.

In Peony Park v. O'Malley, supra, the cabaret tax had been collected as in the Geer case from the operator of a public dance hall where admission had been charged. The tax had been collected in respect to incidental sales. The refund was denied by the district court, 121 F. Supp. 690, and the judgment was affirmed in this Court, (233 F.2d 668). We recognized a change had been made in the cabaret tax law in respect to its applicability to sales of incidentals in public ball rooms where admission was charged, but restaurants affording music and dancing privileges in connection with the serving and selling of food were in no wise under consideration.

We find nothing in the opinions or the amendment to relieve the Club from its liability to cabaret tax. The district court was clearly mistaken in holding in this case that the Tia Wanna Club was not subject to the cabaret tax throughout the period involved in the suit.

"The purpose of this amendment is to make it clear that the principles set forth by the district court in the case of Geer v. Birmingham ([D.C.], 88 F.Supp. 189) are controlling in the determination of whether the establishment involved is operating as a cabaret or as a dance hall, and to avoid the broad construction placed upon the statute in the case of Avalon Amusement Corporation v. United States ([7 Cir.], 165 F.2d 653) and in the court of appeals decision reversing the decision of the district court in the Geer case (Birmingham v. Geer [8 Cir.], 185 F.2d 82), which require that dance halls, and similar establishments be taxed as cabarets, even though the serving or selling of food, refreshments, or merchandise is merely incidental."

The holding was adhered to, however, throughout the trial and the jury was instructed in accord with it. The jury was told that "plaintiff was not subject to a cabaret tax after November 1, 1951" and "that the issues of fact to be submitted would be with respect to the contentions of the parties as to the amount of cabaret taxes, if any, that were due or the excess of taxes, if any, that were paid prior to November 1, 1951." At the conclusion of all the evidence the court stated in the first instruction to the jury, "The case you have heard is one involving federal cabaret taxes for the period April 1, 1950 through October 31, 1951."

The jury returned two verdicts. In one it found in favor of the plaintiff on his claim for refund from April, 1950 to November 1, 1951, in the amount of $2,388.97. The other was an instructed verdict for plaintiff for refunds for the period from November 1, 1951 through December 31, 1953. Judgment for plaintiff was rendered on the verdicts after motion for judgment notwithstanding the verdicts or for new trial had been overruled. The judgment also ordered that the United States take nothing by reason of its intervention.

The District Director and the United States appeal.

## I.

We consider first the verdict of the jury and the judgment thereon for plaintiff for refunds for the period when the court considered the Club to be subject to cabaret tax, namely, from April 30, 1950 to November 1, 1951.

The plaintiff adduced evidence from which the inference might fairly be drawn to establish his claim that he had paid the full "20 per cent of all amounts paid for refreshment service or merchandise by or for any patron or guest who was entitled to be present" during the time dancing was permitted at the Tia Wanna Club in compliance with the requirements of the cabaret tax statute, Section 1700(e). Also that in addition he had over paid by paying 20 per cent upon the 20 per cent federal excise tax and the 2 per cent state gross receipts

tax, or 122 per cent of gross receipts and had been erroneously assessed on that basis. His burden of proof was heavy for two main reasons, first, because the receipts from the patrons who came early to the Club and were served and paid and left before the dancing hour of 8 P.M. were not taxable and it was difficult to identify and segregate those receipts exactly so as to arrive at the exact percentage of taxable and nontaxable receipts, and secondly, although plaintiff had taken care to keep his records and books, some had been lost by flood water in a basement store room. But he called as his witnesses skilled accountants who had worked in the revenue service of the government and were well informed and at the conclusion of evidence offered by him, the court overruled an extended motion by defendants for dismissal for insufficiency of evidence and for judgment under Rules 50(a), 12(c) and 56(b), Federal Rules of Civil Procedure, 28 United States Code.

▮ Following the ruling on their motion the defendants called as their only witness, James E. Pollard, an internal revenue agent in the office of the District Director of Internal Revenue at Little Rock, Arkansas, who, together with another agent, had made two investigations and submitted reports concerning the cabaret tax liability of the Tia Wanna Club. One agent studied the plaintiff's income tax returns and the witness applied himself to the excise tax in respect to the Club, and the witness said it was plain that the taxpayer had reported excise tax on about half of the total sales at the Tia Wanna Club that had been reported as income on the income tax return.

The expert opinion of the defendant's witness was that the taxpayer attributed in his return for the excise tax too large a percentage of receipts of the Club to patrons whose payments were not subject to the cabaret excise, i. e. to patrons who came and were served, paid and left before the dance hour of 8 P.M., so "that they were not entitled to be present during any portion of such performance"

within Section 1700(e) (1) and their purchases were not subject to tax. In the opinion of the defendant's witness over ninety per cent of the receipts were taxable. His testimony was competent and was received at length and in detail and it manifestly tended to entirely defeat the plaintiff's action and to support the petition in intervention of the government as to each of the tax periods in issue.

But however persuasive we may consider the testimony for defendants, it was not completely demonstrative so as to entitle the defendants to an instructed verdict.

The court submitted the issues as to the period from April, 1950 to November 1, 1951 to the jury and instructed, i. a.:

"* * * Plaintiff contends that the Government agent erroneously computed the cabaret tax upon the collections made by the plaintiff for food and service at his restaurant and a 20% cabaret tax and a 2% sales tax and made an assessment of said amount on this erroneous computation. In other words, it is plaintiff's claim that the assessment upon which he paid the amounts involved over the period of time above mentioned was computed upon 122% of gross collections. If you find from a preponderance of the evidence that the plaintiff was so erroneously assessed and that he paid these sums of money upon said erroneous assessment, and further that the payments made by him before said assessment was made were correct and that he had already paid the taxes that were due on all amounts which he received for refreshments and service as that duty to pay is hereinafter in these instructions, you will find for the plaintiff.

"Instruction No. 4.

"If you find for the plaintiff, you will deduct from the amount mentioned in Instruction No. 3 whatever amount you may find from the testimony that should have been paid as taxes upon food and service furnished persons designated in the testimony as stags and also tax that was due on food and service furnished to those patrons who paid their bills before 8:00 o'clock and stayed for entertainment after their bills had been paid.

"Plaintiff admits that there should be deducted from the amount which he claims the sum of $899.05 for the food and service furnished stags and $899.05 for the tax due on the food and service furnished patrons who came before 8:00 o'clock and paid their bills before 8:00 o'clock and stayed for entertainment. You are not bound to accept the admissions of the plaintiff as to these two respective deductions, but you will be governed solely by the testimony in the case in your findings as to what amount these deductions should be.

"Instruction No. 5.

"As you, of course, understand, the defendants deny that the plaintiff is entitled to recover anything and the United States Government has filed a counterclaim against Mr. Brown for additional cabaret taxes for the period from January 1, 1951, to October 31, 1951. The amount which the United States Government would be entitled to recover, if you find in its favor, is not involved, and in determining that issue you will be governed by the next instruction.

"Instruction No. 6.

"You are instructed that if you find from a preponderance of the evidence that the taxpayer's books were inadequate to determine the correct tax liability of the plaintiff, and that the intervenor, United States of America, arrived at, by a reasonable method of computation, the additional tax which it claims in this action, then you will find for the intervenor, United States of America.

"Instruction No. 7.

"The law imposes a cabaret tax in an amount equivalent to 20% of all

amounts paid for admission, refreshment, service, or merchandise at any cabaret or other similar place furnishing a public performance for profit by or for any patron or guest who is entitled to be present during any portion of such performance.

"The words 'entitled to be present' as used in this law means patrons or guests who actually remain during any portion of the dancing or entertainment. A patron who pays and leaves the establishment before the dancing and entertainment begins does not come within the meaning of this language. In other words, the test is not when the amount is paid, but instead is whether the person paying for refreshments, etc., was present during any portion of the dancing or entertainment.

"Instruction No. 8.

"You are further instructed that the Commissioner of Internal Revenue is charged with the duty and the power by law of assessing internal revenue taxes of the Government of the United States and when an assessment has been made by him it is to be presumed, until such presumption is overcome by proof to the contrary, that it was made upon sufficient evidence and was in all respects correct. Before you can disregard a determination of the Commissioner, you must be convinced by a preponderance of the evidence that the Commissioner acted in a manner unjust to plaintiffs and unwarranted by the actual facts. Such determination and any assessment made pursuant thereto is prima facie evidence of the resulting tax liabilities, and prima facie evidence is such evidence as is sufficient when unassailed to establish a given fact, and it remains sufficient for that purpose until it is rebutted and overcome by competent evidence.

"The Government's determination of tax liability, as stated, is presumed to be correct and this presumption is effective until the taxpayer introduces evidence of the invalidity of the determination. Therefore, if you find from a preponderance of the evidence that the Government's actions and its computations upon which the assessment is based are arbitrary and excessive then the assessment is not entitled to treatment as presumptively correct. Thus, in this case, if you find from a preponderance of the evidence that the Government's computation of the tax here imposed was arbitrary and excessive, then I instruct you that the Government's assessment loses its presumptive correctness.

"Instruction No. 9.

"The plaintiff must not only show by a preponderance of the evidence that the findings upon which the Commissioner's assessment is based are erroneous, but he must go further and establish the allegations alleged in his complaint. In other words, not only must the plaintiff prove that the Commissioner was wrong, but he must also prove that the plaintiff was right. The plaintiff in such a case must show the facts from which the amount of tax, if any, due him can be computed. Neither the court nor the jury is permitted to speculate upon how much of the tax, if any, was erroneously assessed and collected. Therefore, if you find that the plaintiff has failed to prove by a preponderance of the evidence the correct amount of tax due, then you will find for the defendant and the intervenor."

On this appeal, the point relied on and argued for reversal of the part of the judgment now under discussion (that is, the judgment for $2,388.97 with interest for refund on payments made for the period of April, 1950 to November 1, 1951) is, that the court erred in refusing to direct a verdict in favor of the government for that period.

But the record does not show that either of the defendants made any motion for directed verdict at the close of the evidence taken at the trial so as

to entitle them to a review of the sufficiency of the evidence to support the jury verdict. The motion they made at the conclusion of the plaintiff's evidence was waived by their introduction of evidence on their behalf. The trial court was not required to rule on the question of the sufficiency of the evidence to take the case to the jury in the absence of a motion for directed verdict made at the close of all the evidence. Neither did the court err in refusing to grant judgment notwithstanding the verdict. Only a party who has first made a motion for a directed verdict may, under Rule 50(b) Federal Rules of Civil Procedure, move for a judgment notwithstanding the verdict. Cf., McDonough v. U. S., 8 Cir., 248 F.2d 725; O Malley v. Cover, 8 Cir., 221 F.2d 156, and cases cited.

We must conclude therefore that the point made for the appellants in respect to the verdict and judgment for the plaintiff for $2,388.97 with interest may not be sustained. The verdict was responsive to the instructions of the court and we may not reverse on the ground that "the court erred in refusing to direct a verdict in favor of the government for that period." That part of the judgment is affirmed.

## II.

The other verdict in favor of the plaintiff was directed by the court in general terms for refunds of cabaret taxes paid during the period from October 31, 1951, to December 31, 1953, and judgment was accorded thereon for the sum of $5,022.11 for refunds for that period with interest to the date of judgment amounting to $1,178.63.

The point upon which the appellants rely for reversal of this part of the judgment appealed from is that the court erred in directing a verdict for the taxpayer as to this period.

The record does not disclose the reasoning upon which the district court concluded that plaintiff was entitled to his refund during this period as a matter of law or why the peremptory instruction for plaintiff was given. Undoubtedly it derived in some degree from the court's conclusion that the Tia Wanna Club was not subject to tax as a cabaret or other similar place within the definition of that term in Section 1700(e) (1), as amended. As above stated, we think the Club business came squarely within the definition of a cabaret or other similar place furnishing a public performance for profit within the definition "a restaurant * * where music and dancing privileges are afforded the patrons in connection with the serving of food" and that it was subject to the tax.

■ The record shows no basis for the court's giving the peremptory instruction for plaintiff even though it deemed the business exempted by the amendment from the excise.

■ A taxpayer may not advance one ground for refund in his claim filed with the Commissioner and rely upon an entirely different ground in a subsequent suit for refund. Ney v. United States, 8 Cir., 171 F.2d 449, 451; certiorari denied 336 U.S. 967, 69 S.Ct. 940, 93 L.Ed. 1119; Taber v. United States, 8 Cir., 59 F.2d 568, 571; certiorari denied, 287 U.S. 636, 53 S.Ct. 86, 77 L.Ed. 551; Lucky Tiger-Combination Gold Mining v. Crooks, 8 Cir., 95 F.2d 885, 889; Angelus Milling Co. v. Commissioner, 325 U.S. 293, 295–296, 65 S.Ct. 1162, 89 L.Ed. 1619; Real Estate Title & Trust Co. v. United States, 309 U.S. 13, 18, 60 S.Ct. 371, 84 L.Ed. 542; United States v. Felt & Tarrant Co., 283 U.S. 269, 272–273, 51 S.Ct. 376, 75 L.Ed. 1025; Carmack v. Scofield, 5 Cir., 201 F.2d 360, 362; Samara v. United States, 2 Cir., 129 F.2d 594.

This suit for refunds was based upon the disallowance of claim plaintiff made for refunds on form 843 and that claim was solely for refunds of amounts paid in excess of a 20 per cent cabaret tax that plaintiff did not question and had admittedly collected from his patrons. The cause of action set up in plaintiff's complaint was also for recovery of the same alleged over payments. In its instructions to the jury upon that part of the action that was submitted for jury determination, the court recognized that the burden was upon plaintiff not only

to prove the error in the assessments he set forth on the form 843, but also to prove that he was right, that is, to prove the amounts of tax rightly due and that he had paid them.

The court also recognized that there was an issue for the jury as to the adequacy of plaintiff's books "to determine the correct tax liability" and whether the United States had arrived at "additional tax * * * by reasonable methods of computation."

We are satisfied there was no sound basis for deciding that the plaintiff was entitled to recovery of refunds as a matter of law or to the peremptory instruction to the jury to award such recovery. The verdict and judgment for plaintiff for refunds during the period October 31, 1951, through December, 1953, are vacated and reversed and that part of the action is remanded for new trial without prejudice on account of the part of the judgment that is affirmed.

Affirmed in part: reversed and remanded in part.