*An order will issue in accordance herewith.*

ESTATE OF M. A. COLLINS, DECEASED, LILA T. COLLINS, ADMINISTRATRIX, AND LILA T. COLLINS, INDIVIDUALLY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62264. Filed October 30, 1958.

*Hugh R. Dowling, Esq., William R. Frazier, Esq.,* and *James E. Miller, Esq.,* for the petitioners.

*Hugh G. Isley, Jr., Esq.,* for the respondent.

242

246

252

OPINION.

KERN, *Judge:* The first issue involved in the instant case is whether respondent erred in his determination "that the 68 lots in Unit 2, Rodney Subdivision, sold * * * in 1951 were held primarily for sale to customers in the ordinary course of a trade or business within the meaning of section 117 (a) (1) of the Internal Revenue Code of 1939 and that the entire gain realized from the sale of these lots is taxable as ordinary income."

Petitioners, relying on the fact that title to the subdivision was taken in the name of Lila T. Collins, a housewife, contend that it was purchased for her as an investment by her husband to whom she had turned over funds of her own "from time to time," that the sales activities of her husband, M. A. Collins, could not be attributed to her, and, even if they could, they were not "the usual activities associated with one in the real estate business."

This contention is without merit. The record before us clearly indicates that M. A. Collins was engaged in the business of buying and developing real estate subdivisions and selling the lots principally to builders for many years, including the year before us, that his policy was and had been to take title to the property used in this business in the name of his wife, that she signed all necessary documents in conformity with his wishes, that the property known as the Rodney subdivisions was acquired and exploited as a part of the regular real estate business of M. A. Collins, and that the sales of the lots therein being principally to builders did not entail and require the sales activity normally associated with the "retail" sale of residential units to the ultimate purchasers. The fact that Lila T. Collins may have contributed an indeterminate amount of money to M. A. Collins at an indeterminate time for his use in this business and the fact that he may have purchased some rental property for her as an investment are both irrelevant.

The second issue has given us more difficulty. That issue is whether respondent erred in his determination "that no part of the cost of a sewage disposal system located in Rodney Subdivision is includible in the basis of the lots in said subdivision."

Respondent contends that his determination is justified under the authority of two comparatively recent cases, *Colony, Inc.*, 26 T. C. 30, affirmed on other issues 244 F. 2d 75, and *Albert Gersten*, 28 T. C. 756.

The petitioners contend that the basic purpose in constructing the sewage disposal system in this case was to make salable the lots in the Rodney subdivisions, and that under the authority of *Country Club Estates, Inc.*, 22 T. C. 1283, the cost of the system should be regarded as part of the basis of the lots.

The case upon which respondent principally relies, *Colony, Inc.*, *supra*, involved the construction by subdividers of a water supply system. In deciding that the cost of that system should not be regarded as a part of the basis of the lots sold, we distinguished *Country Club Estates, Inc.*, *supra*, in the following language:

The difficulty with petitioner's contention is that, unlike the taxpayer in *Country Club Estates, Inc.*, *supra*, the petitioner has not given up any property in order to sell its lots. For the funds it expended, the petitioner acquired a water supply system which it owned and operated during the taxable years and thereafter. It is true that the system has not been operated at a profit, due, perhaps, to the small number of houses which have been constructed at The Colony. And it also may be true, as petitioner contends, that the pumping station may be abandoned at some time in the future, when the facilities of the Lexington Water Company reach the subdivision. These circumstances, however, do not alter the fact that the petitioner retained full ownership and control of the water supply system during the taxable years, and that it did not part with the property for the benefit of the subdivision lots. Because of this retention of ownership, *Country Club Estates, Inc.*, *supra*, is distinguishable. * * *

A careful consideration of the cases above cited indicates that if a person engaged in the business of developing and exploiting a real estate subdivision constructs a facility thereon for the basic purpose of inducing people to buy lots therein, the cost of such construction is properly a part of the cost basis of the lots, even though the subdivider retains tenuous rights without practical value to the facility constructed (such as a contingent reversion), but if the subdivider retains "full ownership and control" of the facility and does "not part with the property [i. e., the facility constructed] for the benefit of the subdivision lots," then the cost of such facility is not properly a part of the cost basis of the lots.

It is apparent to us on the record of the instant case that the basic purpose for the construction of the sewage disposal system was to induce and make possible the sale of the lots in the Rodney subdivisions. The difficult problem is whether petitioners retained such full ownership and control of the sewage system without sufficiently parting with the property rights therein for the benefit of the subdivision lots as to make applicable the rule enunciated in *Colony, Inc.*, *supra*.

The resolution of this question requires a careful consideration of all the pertinent facts, and we have set them forth *in extenso* in our findings.

After a detailed study of these facts and of the entire record herein, we have concluded that petitioners constructed the sewage system not only for the basic purpose but for the sole purpose of inducing and making possible the sale of lots in the Rodney subdivisions, that they did not retain full ownership and control of the sewage system, and

that they parted with material property rights therein for the benefit of the subdivision lots.

Our analysis of the various transactions evidenced by the documents quoted so extensively in our findings indicates that petitioners intended to and did convey substantial beneficial property rights in the sewage disposal system to the owners of lots in the Rodney subdivisions. There was retained to their wholly owned corporation the unprofitable right (and duty) to operate the system for the benefit of the owners of the lots. They also retained a reversionary interest contingent upon a remote possibility. In view of our conclusion, it is our opinion that the case of *Colony, Inc., supra,* is not controlling and that the applicable rule is the general one stated in *Country Club Estates, Inc., supra.*

Under the facts of this case we are persuaded that the inclusion of the cost of the sewage system in the basis of the lots would better and more fairly reflect the true income received by petitioners during the taxable year. Such inclusion is permissible and proper under our interpretation of the pertinent authorities. Therefore on this issue our decision is for petitioners.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, dissents.

———

MURDOCK, *J.*, dissenting: Clearly the petitioners were in the business of selling real estate but the cost of the sewage disposal plant should not be a part of the cost of the lots.

The sewage disposal plant was owned by the Sanitary Company and the petitioners owned all of its stock. They would have reaped the benefits through that corporation if the operation of the plant had been profitable and they would have benefited similarly from a sale or disposition of the plant. This case is not distinguishable satisfactorily from *Colony, Inc.,* 26 T. C. 30, even if the petitioners paid the cost of the construction of the sanitary plant themselves. I think the majority opinion on this point makes bad law. If the cost of the sewage plant was paid by money contributed to the Sanitary Company by the petitioners, either directly or constructively, the loss, if any, would be a loss of the corporation and the petitioners' case for ignoring the corporation and deducting those costs as their costs of the lots would be even weaker.

The mere fact, if true, that there was no expectation of profit from the operation of the plant is not a determining factor and the fact that the operation of the sewage plant turned out to be unprofitable is immaterial. If the petitioners had desired to include the cost of the sewage disposal plant in the cost of the lots, they could have trans-

ferred the title to that plant in some way for the sole benefit of the lot owners but, instead, they retained title to that property for their own benefit through a wholly owned corporation.

HARRON, WITHEY, and DRENNEN, *JJ.*, agree with this dissent.