WILLIAM C. DAHLING AND FRANCES L. DAHLING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dahling v. Commissioner
Docket No. 15984-85.
United States Tax Court
T.C. Memo 1988-430; 1988 Tax Ct. Memo LEXIS 457; 56 T.C.M. (CCH) 131; T.C.M. (RIA) 88430; September 12, 1988. *457 R. W. Kessler, for the petitioners. James E. Kagy, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Taxable Year Ended
Deficiency
December 31, 1980
$ 12,197.01
December 31, 1981
2,017.00
After agreements and concessions, [1] the sole issue for decision is how $ 18,538.46 of development costs should be allocated to the basis of the lots in a subdivision owned by petitioner William C. Dahling (hereinafter when used in the singular form, "petitioner" refers to William C. Dahling). *458 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners William C. and Frances L. Dahling are husband and wife and resided at Xenia, Ohio, at the time they filed their petition with the Tax Court in this matter. For taxable years 1980 and 1981, petitioners filed joint Federal income tax returns. On March 8, 1985, respondent issued a statutory notice of deficiency to petitioners concerning their 1980 and 1981 income tax liability. During taxable year 1980, petitioner, a dentist, was also involved as a land developer for the D & D Development Company, a sole proprietorship. In that year, petitioner purchased a tract of land located in Xenia, Ohio, for the purpose of subdividing and constructing three duplex houses upon it. In order to obtain necessary permits, petitioner submitted plans to the City of Xenia showing the land subdivided into six lots with a street down the middle. After obtaining the necessary permits, petitioner incurred a total development cost of $ 37,076.90 - $ 18,946.25 for road and excavation *459 costs and $ 18,130.65 for sewer and water line costs. During the same taxable year, petitioner built duplexes on three of the six lots - lots one, two, and three. Petitioners allocated one-sixth of the total development costs, or $ 6,179.48, and one-sixth of the total land cost, or $ 4,650, to the basis of each of the lots upon which duplexes were built. Petitioner held lots four, five, and six for future sale. On Schedule C of their 1980 income tax return, petitioners claimed a deduction of $ 18,538.46 for development costs of lots four, five, and six, upon which duplexes were not constructed. Respondent disallowed this claimed deduction as an expense for 1980 due to respondent's determination that the development costs of $ 18,538.46 should be capitalized and allocated equally to the basis of lots four, five, and six. Lots four, five, and six were each appraised as having a value of $ 6,000 as of 1985. OPINION The sole issue for our consideration is how $ 18,538.46 of development costs should be allocated to the basis of the lots in petitioner's subdivision. Petitioners concede that their claimed Schedule C deduction of $ 18,538.46 in 1980 for the development costs of *460 lots four, five, and six should not be allowed. Petitioners contend on brief that under the authority of Commissioner v. Laguna Land & Water Co.,118 F.2d 112 (9th Cir. 1941) and Keeler v. United States,174 F. Supp. 69 (N.D. Ga. 1959), the development costs in issue should be allocated to the basis of lots one, two, and three because these lots were the only lots to benefit from the improvements. The Laguna court held that expenditures for streets and other improvements in a subdivision that benefited the lots sold should be allocated to the basis of the lots sold. The Keeler court held that the entire cost of a fence should be allocated to the basis of the parcel of land containing the fence because the fence only incidentally benefited other parcels. Petitioners introduced into evidence an appraisal valuing lots four, five, and six at $ 6,000 each as of 1985. Respondent objected to the admission of the appraisal on the grounds that it is neither relevant nor material. The appraisal, however, tends to establish the value of lots four, five, and six because the appraisal's estimates of the value of the lots are based on the sales *461 prices of similar properties. As a result, we find that the appraisal is relevant and material, and we overrule respondent's objection. See Fed. R. Evid. 401 and 402. Petitioner purchased the property for an amount that equals $ 4,650 per lot. Petitioners argue that lots four, five, and six could not have benefited from the improvements because the increase in their fair market values was not commensurate with the amount respondent allocated to the basis of lots four, five, and six. On the basis of the record in this case, we find that all six lots benefited from the construction of the street and the water and sewer lines. Street, water, and sewer access became available to all six lots as a result of petitioner's endeavors and expenditures. Petitioners' argument based on the appraised fair market value is unconvincing because the fair market value of property does not necessarily reflect its basis. The fact that the fair market value of each lot did not increase by one-sixth of the development costs only indicates that petitioner made a poor business decision to expend such large amounts for capital improvements. This case can be distinguished from Keeler because *462 all six lots directly benefited from the improvements in the instant case whereas only parcel was directly benefited in Keeler. Since all six lots here benefited from the improvements, the rationale of Laguna Land & Water Co. would require the development costs to be allocated to all six lots. Petitioners rely on a Fifth Circuit decision, Willow Terrace Development Co. v. Commissioner,345 F.2d 933 (5th Cir. 1965), affg. 40 T.C. 689 (1963), cert. denied 382 U.S. 938 (1965), as support for their contention that the development costs at issue should be allocated to the basis of lots one, two, and three. Petitioners focus on this Circuit's interpretation of our opinion in Estate of Collins v. Commissioner,31 T.C. 238 (1958). [2]
*463 In Estate of Collins, the taxpayers constructed a sewage disposal system for a subdivision. We stated: If a person engaged in the business of developing and exploiting a real estate subdivision constructs a facility thereon for the basic purpose of inducing people to buy lots therein, the cost of such construction is properly a part of the cost basis of the lots, even though the subdivider retains tenuous rights without practical value to the facility constructed (such as a contingent reversion), but if the subdivider retains "full ownership and control" of the facility and does "not part with the property * * * for the benefit of the subdivision lots," then the cost of such facility is not properly a part of the cost basis of the lots. [Estate of Collins v. Commissioner, 31 T.C. at 256.]
We held in Estate of Collins that since the taxpayers constructed the sewage disposal system to make possible the sale of lots in their subdivision and gave up material property rights for the benefit of the subdivision, the cost of the sewage system should be included *464 in the basis of the lots. In Willow Terrace, the taxpayers constructed a water plant and a sewerage disposal plant for a subdivision. As the Fifth Circuit interprets the Estate of Collins rule, "The problem * * * is whether deduction or capitalization of such costs will more accurately reflect the economic realities of the situation from the standpoint of the subdivider." Willow Terrace Development Co. v. Commissioner,345 F.2d at 938. The Fifth Circuit listed several factors to be considered in deciding whether costs should be deducted or capitalized. These factors include the importance of the facilities to the sale of the lots, the subdivider's purpose in constructing the facilities, the rights retained by the subdivider, and the probability of recovery of the costs through later sale. The Fifth Circuit considered each factor and treated no single factor as being determinative. The Fifth Circuit held that since the water and sewerage systems were necessary for the sale of the lots, the systems were constructed for the purpose of selling lots, the rights retained by the subdivider were of little value, and the chance of recovering the costs through *465 future sale of the facilities were remote, the cost of the facilities should be allocated to the basis of the lots. Petitioners' reliance on Estate of Collins and Willow Terrace is misplaced. Petitioners argue that Estate of Collins and Willow Terrace support their position because the street, water lines, and sewer lines petitioner had built were essential to the sale of only lots one, two, and three. However, on the basis of the record, we find that the improvements were equally necessary to the sale of all six lots. In order to obtain city permits for the subdivision as a whole, petitioner was required to divide the land into six lots and construct the street, water lines, and sewer lines. Since the improvements were required for the entire subdivision, we find that th improvements were equally necessary for the sale of each of the six lots. Following the rationale of Willow Terrace, the fact that the improvements were equally necessary for the sale of each of the lots is a factor indicating that the development costs in dispute should be allocated to lots four, five, and six. Petitioners contend that petitioner's purpose in making the improvements *466 was to sell lots one, two, and three. However, we find that petitioner's purpose in making the improvements was to encourage the sale of all lots in the subdivision. Before petition incurred any of the costs at issue in this case, he knew that the property would be divided into six lots and he intended to sell all six lots. We have already determined that all six lots benefited from the improvements. We conclude that petitioner's purpose in making the improvements was to encourage the sale of all six lots. Following the rationale of Estate of Collins and Willow Terrace, petitioner's purpose in making the improvements is a factor indicating that the costs at issue should be allocated to the basis of lots four, five, and six. Petitioners argue that Willow Terrace supports their position because petitioner will not be able to recover his costs unless the costs are allocated to lots one, two, and three. In Willow Terrace, the taxpayers would not have been able to recover their costs unless the costs were allocated to the basis of the lots because the assets retained by the taxpayers had little if any marketable value. The Fifth Circuit found that the taxpayers' *467 inability to recover their costs through any other means was a factor indicating that the costs should be allocated to the basis of the lots. Petitioner's argument that the development costs can only be recovered if they are allocated to lots one, two, and three is unpersuasive. Petitioner is holding lots four, five, and six with the intention of selling them. Petitioner has introduced into evidence an appraisal indicating that lots four, five, and six had a value of $ 6,000 each in 1985. Petitioner may be able to recover his costs through the future sale of lots four, five and six. To the extent petitioner is unable to recover his costs on the sale of lots four, five, and six, he will have a loss. If petitioner has a loss on the sale of the lots, the loss will be due to an error in his business judgment or to other possible extenuating circumstances, such as the vicissitudes of the market. In sum, the construction of the street, water lines, and sewer lines benefited all six lots. The construction was for the purpose of selling all lots in the subdivision and was equally necessary for the sale of all six lots. Petitioner may be able to recover the development costs through *468 the future sale of lots four, five, and six. We find that the development costs at issue should have been allocated to the basis of lots four, five, and six. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. On February 10, 1986, the parties filed a Stipulation of Facts and Supplemental Stipulation of Facts in which they made the following agreements: 1) the amount claimed by petitioners for automobile depreciation for tax years 1980 and 1981 should be reduced by $ 4,339 and $ 831, respectively; 2) petitioners' taxable income for tax years 1980 and 1981 should be increased by $ 1,304.42 and $ 1,079.42, respectively, for income from reimbursement for automobile expenses; 3) petitioners' investment tax credit for taxable year 1980 should be reduced to a permitted amount of $ 1,073.27; and 4) petitioners' income tax liability for tax year 1980 should be increased by $ 374.98 due to the recomputation of a prior year's investment credit. In their reply brief, petitioners conceded that for the taxable year 1980, their claimed deduction for development costs in the amount of $ 18,538.46 should not be allowed and that the $ 18,538.46 must be added to the cost basis of the property developed. As a result, a Rule 155 computation is necessary in this case. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue and rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Since the appeal of the case under consideration would lie in the Sixth Circuit, we would be obligated to follow the Sixth Circuit if it had a prior opinion on this issue. See Golsen v. Commissioner,54 T.C. 742, 757 (1970), affd. on the other issues 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). However, neither party to this action has presented us with a Sixth Circuit case directly on point. As a result, we will follow our decision in Estate of Collins and will follow the Fifth Circuit's decision in Willow Terrace as that Circuit's decision is consistent with our decisions in Willow Terrace and Estate Of Collins.↩